Pierce v. Short.

CHRISTOPHER R. PIERCE, Plaintiff in Error, v. WILLIAM B. SHORT, Defendant in Error.

ERROR TO MENARD.

The assignor of a promissory note is liable to the assignee, where the latter, by the exercise of due diligence, prosecutes the maker to insolvency, where a suit against the maker would be unavailing; and where the maker had absconded or left the State when the note fell due, or, if assigned after maturity, if he had absconded or left the State when the assignment was made.

The assignee is not bound to give the assignor notice of non-payment.

The presentment of a note to the maker on the day it falls due, and notice of non-payment to the assignor, will not, under our statute, give the assignee any right of action against the assignor.

The assignee must use due diligence to coerce payment of a note from the maker, when such a course will result in the collection of the note; omitting to do so, he loses all recourse against the assignor, unless he can show, that the note could not have been collected, or that the maker was beyond the reach of process. The mere possibility that a debtor may not insist on his legal right to retain such property as is exempt from execution, does not render the prosecution of a suit and the issuing of an execution necessary before proceeding against the indorser of a note.

The assignor of a note cannot defeat an action against him by an assignee of a note, by merely proving that debts were owing to the maker, which might have been reached by garnishee process; he must show further that the assignee had notice of the existence of such debts.

SHORT sued Pierce before a justice of the peace upon an assigned note, made by one Hungerford, in favor of one A. Thornton, by Thornton indorsed to Pierce, and by Pierce to Short. On the trial before the justice, Pierce recovered a judgment for his costs. Short thereupon appealed to the circuit court. The cause was submitted to WOODSON, Judge, at November term, 1852, of the Menard Circuit Court, without the intervention of a jury, when the finding was for Short, and a judgment was pronounced in his favor. A bill of exceptions was taken. Pierce brought the cause to this court, and assigned for error the decision of the circuit court, that notice was not necessary; that presentment of the note was not necessary; that plaintiff should not proceed in another county; that a levy need not be made on articles not specially exempt from execution; and that debts need not be garnisheed.

W. H. HERNDON, for plaintiff in error, cited Smith on Mer. Law, 230, 231; 6 Alabama R. 865; 14 New Hamp. 70; 25 Maine, 16; 2 Scam. 369; 1 Dana, 182; 4 Gilman, 3; 8 B. Monroe, 131; 10 Alabama, 370; 1 Gilman, 333.

T. L. Harris, for defendant in error.

Treat, C. J.   This was an action of assumpsit brought by Short against Pierce, on the 13th of December, 1851. The plaintiff's case was as follows. He introduced a promissory note made by Hungerford on the 25th of January, 1850, for the sum of $68.04, and payable to Thornton one day after date ; on which was an assignment by Thornton to the defendant, dated the 20th of September, 1851 ; and also an assignment by the defendant to the plaintiff, dated the 18th of October, 1851. McAtee, a constable of Menard county, testified, that he held an execution against Hungerford in the fall of 1851, which he returned " no property found," and he had reason to believe that Hungerford had no property liable to execution. Hurt testified, that in the fall of 1851, he held a chattel mortgage upon the furniture of Hungerford for its full value, and that Hungerford had no other property but a horse and buggy, which were not worth more than $60. Cautrell testified, that he was a surety of Hungerford to the school fund, and was compelled to pay the debt; in November, 1851, he went to Logan county and made diligent inquiry, but could not find any property there belonging to Hungerford.

The defendant proved by the witness Hurt, that Hungerford owned a horse and buggy about the 1st of November, 1851, which he then removed to Logan county, where he was residing and doing work upon a church.   Another witness testified to a conversation had by the parties about the note, prior to the commencement of this suit, in which defendant told plaintiff to go upon Hungerford in Logan county for payment, but plaintiff declined, and said he had a better man in Menard county.   Knapp testified, that Hungerford was living in Logan county in the fall of 1851, and was there engaged in building a church ; he did work thereon to the amount of $400, one half of which was paid him, prior to the 1st of October, 1851, and the last payment of $172 was made on the 15th of November following.

On the foregoing state of facts, the circuit court gave judgment for the plaintiff.

Our statute makes the assignor of a promissory note liable to the assignee, where the latter, by the exercise of due diligence, prosecutes the matter to insolvency ; where a suit against the maker would be unavailing ; and where the maker had absconded or left the State when the note fell due, or, if assigned after maturity, when the assignment was made. On the happening of one of these contingencies, and not otherwise,

the assignee may at once resort to the assignor, and recover back the amount paid for the note, as so much advanced upon a consideration that has failed. He is not bound to give the assignor notice of non-payment, as in the case of a bill of exchange or promissory note under the law merchant. State Bank of Illinois v. Hawley, 1 Scammon, 580; Hilborn v. Artis, 3 Ibid. 344. The presentment of a note to the maker on the day it falls due, and notice of non-payment to the assignor, will not, under our statute, give the assignee any right of action against the assignor. The assignee must use due diligence to coerce payment from the maker, where such a course will result in the collection of the note. If he fails to do this, he loses all recourse upon the assignor, unless he can show, either, that the note could not have been collected by the prosecution of· a suit against the maker, or that the maker was out of the jurisdiction, and therefore beyond the reach of legal process.

In this case, the maker was within the State when the note was assigned, and the plaintiff made no attempt to enforce payment by suit. In order, therefore, to maintain his action against the defendant, the plaintiff was bound to prove that a suit against the maker would have been unavailing; in other words, that the note could not have been collected by a resort to legal remedies. It appeared in evidence, that the maker had no property subject to seizure on execution. His household goods were covered by a chattel mortgage for their full value; and the only other property in his possession was by law exempt from execution. It was not incumbent on the plaintiff to proceed to judgment against the maker, and have an execution levied on the horse and buggy. The mere possibility that the debtor might not insist on his legal right to retain this property as exempt from execution, would not render such a proceeding necessary. The plaintiff showed, *primâ facie*, that a suit against the maker would have been unavailing, and consequently that he had a good cause of action against the defendant. Was that *primâ facie* case destroyed by the proof introduced by the defendant, that the trustees of the church were indebted to the maker of the note? It is contended that the plaintiff should have obtained a judgment on the note, and then have proceeded by process of garnishment to subject this indebtedness to the payment of the judgment. Perhaps this position would be correct, if the plaintiff was aware of the indebtedness; but upon such a case we intimate no opinion. There was nothing in the evidence to charge him with notice of any indebtedness to the maker, and, under such circumstances, we are not inclined to hold that he has lost his recourse

on the defendant. A rule that the assignee should reach and exhaust the debts owing to the maker, before he could resort to the assignor, would in many cases be productive of much injustice, if it did not amount to a denial of any remedy against the assignor. The assignee can easily ascertain whether the maker has any property liable to execution. He may do it by personal examination and inquiry, or by an officer's return upon final process. But it would be very different in relation to debts due the maker. Knowledge of their existence might rest exclusively with the parties. The assignee would never know when he could look to his assignor for payment. A return of *nulla bona* would not protect him, for it is not the duty of an officer to inquire whether there are debts due to the defendant. We hold that the assignor cannot defeat an action brought against him by the assignee, by merely proving that debts were owing to the maker which might have been reached by garnishee process. He must show in addition that the assignee had notice of their existence, if the latter is in any case bound to pursue such a remedy.

The judgment is affirmed.                    *Judgment affirmed.*