# JOHN M. ROBINSON, Appellant, *v.* ALVIN OLCOTT, Appellee.

### APPEAL FROM MACOUPIN.

If the indorsee of a note desires to hold the indorser liable, he must proceed to judgment against the maker, at the earliest opportunity. Any negligence or omission in that regard will release the indorser.

THIS was an action of assumpsit brought by the appellee against the appellant, to the September term of the Macoupin Circuit Court, for 1859, upon a promissory note made by one S. D. Martin to said Robinson, bearing date August 26, 1857, due three months after date, for one hundred and forty-two dollars and forty-four cents, and drawing ten per cent. interest per annum after maturity, and by said Robinson indorsed in blank.

The first and second counts in the declaration allege, that when the sum of money in said note specified became due and payable according to the tenor and effect thereof, the said Martin, the maker thereof, was so insolvent that a suit thereon for the collection of the said sum of money therein specified, would have been then and there wholly unavailing, nor has said Martin paid said money. The third count alleges, that the said Olcott, when the said sum of money specified became due and payable, according to the tenor and effect thereof, used due diligence to collect the said sum of money specified in the said note, by the institution and prosecution of a suit at law thereon, for the collection thereof in the Circuit Court of Macoupin county and State of Illinois, to the December term, A. D. 1857, of said court, against the said Martin, maker of said note, which said December term of said court was the first term of said court next after the maturity of said note; and on the 28th day of September, 1858, the said Olcott recovered a judgment on said note against said Martin, in said court, for the sum of one hundred and forty-four dollars and thirty-one cents damages, and also five dollars and seventy cents of costs, and that on the 18th day of October, 1858, then next ensuing, the said Olcott caused an execution to be issued on said judgment to the sheriff of Macoupin county, which said execution was returned by said sheriff, on the 3rd day of February, 1859, "unsatisfied, no property found in my county to levy this execution." To which are added counts for money lent and advanced, and had and received.

To which declaration the said Robinson filed a plea of the

general issue. The cause was continued to the December term, 1860, when on the 28th day of said month, the cause was tried by the court by consent, without the intervention of a jury.

The plaintiff's evidence consists of—

First. The note mentioned in the declaration, and a blank indorsement thereon by the defendant.

Second. A summons issued by the clerk of the Macoupin Circuit Court, dated December 2, 1857, wherein Silas D. Martin is defendant, and Alvin Olcott is plaintiff, which was returned by the sheriff of said county, served December 1st, 1857. Said defendant was served to appear at said court on the second Monday of December, 1857.

Third. A declaration filed in said court, December 4th, 1857, wherein said Olcott is plaintiff, and said Martin is defendant, and in which the plaintiff declares upon the promissory note and indorsement above mentioned in one special count, to which are added the common money counts. On said declaration there is a copy of the note and indorsement sued on in this case.

Fourth. *A. McKim DuBois,* sworn as a witness for plaintiff, testified: That he was clerk of this court during the years 1857 and 1858, and that there is not on file, nor has there been at any time heretofore, any plea, demurrer or other paper filed by Silas D. Martin, nor was there any plea or demurrer or appearance by said Martin whatever, in the case of *Alvin Olcott* v. *S. D. Martin,* commenced at the December term of this court, A. D. 1857, in assumpsit, on note, and that all the papers in said cause have already been offered and read in evidence in this case. Here the plaintiff requested the witness to turn to the docket of the judge of this court for the December term, 1857, and read the entries in the case numbered 262 on said docket. The witness then read the following entries: "*John M. Robinson* v. *Silas D. Martin,* assumpsit." The witness further testified, that the only entry made by the judge of said court on said docket, was entered on the 28th day of December, A. D. 1857, in the words and figures following: "28 continued," and that there was no cause on said docket, of said term, of Alvin Olcott against Silas D. Martin. The witness then read the entries on the judge's docket for the March term, 1858, in said case, in the words and figures following: "No. 159, *Alvin Olcott* v. *Silas D. Martin,* assumpsit." Witness said that this was all the entry in said case at said term of said court, on the docket of the judge thereof, and that said cause was set for the 6th day of said term. The plaintiff then requested the witness to refer to the case num-

bered seventy-seven, entered on the docket of the judge of the Macoupin Circuit Court, at the September term, A. D. 1858. The witness then read the entries in the words and figures following: "No. 77, *Alvin Olcott* v. *Silas D. Martin*, assumpsit, judgment by default; clerk to assess the damages." Witness then testified, that these entries were all that were made on the judge's docket in the case of Olcott against Martin. The plaintiff then read a judgment by default in the same case rendered at the September term, 1858. The witness then testified, that the December term of this court for the year 1857, commenced on the 14th day of December, 1857, and ended on the 2nd day of January, 1858, and that the March term thereof for the year 1858, commenced on the 22nd day of March, A. D. 1858, and ended on the 3rd day of April, 1858.

Fifth. An execution, issued out of the Macoupin Circuit Court, and dated October 18th, 1858, and directed to the sheriff of said county, and commanding him to make of said Martin $154.31, damages, for said Olcott, and also $5.70 costs. Said execution came to the hands of said sheriff, October 19th, 1858, which was returned by the sheriff on the 3rd day of February, 1860, no property found, and unsatisfied.

This was all the evidence offered by the plaintiff, and here he rested his case.

*Jeremiah W. Owings* was then called and sworn as a witness in the cause, on the part of the defendant, who testified, that he was acquainted with Silas D. Martin, the maker of the note offered in evidence by the plaintiff in this cause, during the years 1857 and 1858; that Silas D. Martin, during the year 1857, and until January or February, 1858, lived in Gillespie, Macoupin county, State of Illinois, and that said Martin was, during his residence at Gillespie, the owner of a buggy worth thirty dollars, and of about thirty hogs worth four dollars per head, and of two horses worth about one hundred dollars per head; that during that time said Martin was trading a good deal in horses, and sometimes had more than two, but never less than two horses; that all the time while at Gillespie, said Martin was in possession of two town lots in said town, on which he built a large house for a tavern stand, worth from four to five thousand dollars; that said Martin had household furniture during the year 1857, and until the month of January, 1858, at Gillespie aforesaid, to the value of four hundred dollars; that in the month of January or February, 1858, said Martin sold or exchanged said tavern stand and lots in Gillespie for a stock of dry goods in the town of Bunker Hill, in Macoupin county, worth about five thousand dollars;

that witness saw Martin in possession of said goods during the summer of 1858, until the month of August, 1858, and that said Martin was in possession of the storehouse in Bunker Hill, and was doing business in it during that time, and that was the last time witness was at Bunker Hill while said Martin lived in said county; that said Martin left the State in the month of January or February, 1859.

Here the defendant rested his case; and this was all the evidence in the case. And thereupon the court found the issue for the plaintiff. The defendant then entered his motion for a new trial, which was overruled.

HORACE GWIN, JOHN I. RINIKER, and E. SOUTHWORTH, for Appellant.

PALMER & PITMAN, for Appellee.

WALKER, J. This was an action, by the assignee, against the assignor of a promissory note. It appears that suit was instituted against the maker, at the December term, 1857, of the Circuit Court. The summons was served in time for that term, no defense was interposed, or even an appearance entered by the maker of the note, yet the cause was continued, at that and the next succeeding term. Judgment by default was entered at the September term, 1858, and execution issued on the 18th day of October following, which was placed in the hands of the sheriff on the next day. It was returned on the 3rd of February, 1859, no property found, and unsatisfied.

According to the uniform and numerous decisions of this court, this cannot be held to constitute diligence, by the institution and prosecution of a suit. The assignee, to have recourse on the assignor, must, if he relies on diligence by suit, institute legal proceedings against the maker, at the first term after the maturity of the note, and must prosecute it to judgment at the earliest period within his power, and then issue execution without delay. If he, through negligence, permits a term to pass without obtaining judgment, he cannot have recourse on the assignor. If he resorts to legal proceedings, he must prosecute them with vigor, so long as such proceedings promise to be available. There is no averment, in the declaration or proof in the record, that the further prosecution of the suit against the maker at the first term would have been unavailing. On the contrary, the evidence shows that a judgment then recovered could have been collected. No excuse is given for failing to take judgment by default, and as no

defense was made, we feel at a loss to see that any can exist. There is an entire want of diligence in this case, to fix the liability of the assignor.

Under the counts, containing an averment that a suit against the maker would have been unavailing, at the maturity of the note, owing to his insolvency, there appear to be no grounds for a recovery. The evidence, we think, is clear and abundantly satisfactory, that the maker then, and for a long period of time afterwards, was in possession of a large amount of property, liable to execution; much more than enough to have satisfied this judgment. He owned both real and personal property, either of which was amply sufficient to have paid the note, until as late as January, 1858, when he traded a tavern stand for a stock of goods which he held in the county until in August of that year. Had the judgment been obtained, as it might have been, at the term to which the suit was brought, this property could have been subjected to its payment. Then these counts are not sustained by the evidence, but the converse of the proposition is proved.

It would be manifestly unjust, to permit the assignee to hold the note, refuse to employ the requisite means for its collection until the maker, with ample means in his hands, becomes insolvent, and then hold the assignor liable. By the assignment the note becomes his, with the entire right to control its collection, and the assignor has no power to act, and unless the assignee is held to due diligence, he would be at the mercy of the assignor. This the law will not permit.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*