## Lewis E. Dillman v. John W. Nadelhoffer.

1. CONTRACTS OF GUARANTY—*Promissory Notes.*—The undertaking of a guarantor of collection of a note is the same as that of an assignor. It is in effect that the note shall be collected at its maturity and assumes an obligation to pay it if the holder shall, with reasonable diligence and

without avail, employ the usual legal means to collect it of the maker, unless such means would be unavailing on account of the insolvency of the maker.

2. SAME—*Requisites of a Recovery.*—In order to recover upon a guaranty it is necessary, if diligence by suit is relied upon, to prove the institution of the suit at the first term of the court having jurisdiction after the maturity of the note and prosecution thereafter, with reasonable diligence and without avail.

3. SAME—*What Reasonable Diligence Does Not Require.*—Reasonable diligence does not require the holder of a note in a suit against the guarantor for the collection of the same to admit an affidavit for a continuance and thus avoid the delay occasioned by the continuance.

**Memorandum.**—Assumpsit. In the Circuit Court of Will County; the Hon. CHARLES BLANCHARD, Judge, presiding. Trial by the court without a jury; finding and judgment for plaintiff in error by defendant. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

GEORGE S HOUSE, attorney for plaintiff in error.

HILL, HAVEN & HILL, attorneys for defendant in error; HALEY & O'DONNELL, of counsel.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Defendant in error brought suit against Calvin Knowlton, since deceased, and plaintiff in error, upon written guaranties of collection indorsed upon two notes of Edward R. Knowlton and Andrew Dillman, dated April 18, 1883, for $8,000 each, and payable to defendant in error on July 1, 1884, and July 1, 1885, respectively, with interest at six per cent. An attachment was sued out in aid of the suit, on the ground of alleged fraudulent concealment and disposition of property by plaintiff in error, so as to hinder and delay creditors, and an issue was made upon the affidavit for such attachment. Calvin Knowlton died while suit was pending, and his death being suggested of record, the suit proceeded against the plaintiff in error. The issues on the guaranties and on the affidavit were both submitted to the court for trial without a jury and were both found for defendant in

error.   The damages were assessed at $6,638.66, and judgment was entered for that amount and costs.   The findings and judgment of the court on both issues are called in question, and it is contended that there was such delay in the prosecution of suits against the makers of the notes for their collection as released defendant in error, and that the transfer of property by him to his wife, found to be fraudulent as to creditors, was not proven to be such.

The guaranties indorsed upon the notes were alike and were in the following words: "For a valuable consideration, we do hereby guarantee the collection of the within note at its maturity."   The undertaking of a guarantor of collection of a note in this State is the same as that of an assignor.   Judson v. Goodwin, 37 Ill. 286.   He agrees that the note shall be collectible at its maturity, and assumes an obligation to pay it if the holder shall, with reasonable diligence and without avail, employ the usual legal means to collect it of the maker, or if the institution and prosecution of a suit would be useless and unavailing on account of the insolvency of the maker.   In the absence of the words "at its maturity" the contracts would be guaranties of collection of the notes at their maturity, and those words neither add to nor detract from the contract.   If those words had not been used in this case, they would have been implied by law, and therefore the contention of counsel for defendant in error, that their use made these guaranties exceptional and precisely like a guaranty of payment, is without foundation.   In order to recover upon the guaranties, it was necessary, if diligence by suit was relied on, to prove the institution of suits at the first term after the maturity of the respective notes and their prosecution thereafter with reasonable diligence and without avail.   Lusk v. Cook, Breese 53; Bestor v. Walker, 4 Gil. 3; Robinson v. Olcott, 27 Ill. 181.   Or there might be a recovery if it were shown that suit would have been unavailing.   Thompson v. Armstrong, Breese 53; Bledsoe v. Graves, 4 Scam. 382; Schuttler v. Piatt, 12 Ill. 417; Pierce v. Shorl, 14 Ill. 144.

The first note matured July 1, 1884, and suit was begun

against the makers July 14, 1884, to the first term of court after its maturity, which was the September term, 1884. The defendants in that suit filed their plea of the general issue with an affidavit of defense to the entire cause of action. During the term they obtained leave to file additional pleas, and entered their motion for a continuance. The motion for continuance was heard on the affidavit of Andrew Dillman alleging the absence of a material witness and stating the facts to be proved by such witness. The motion was sustained by the court and the cause continued, and the defendants on the same day filed seven additional pleas. It is charged that the plaintiff was guilty of such negligence in suffering a continuance by order of the court at that term as discharged the guarantors, and the method proposed by which a continuance would have been defeated, is that plaintiff should have admitted the affidavit in evidence because the testimony of the absent witness would not have been competent, and the plaintiff could have beaten the defendants on the merits. The court held the affidavit sufficient and necessarily held the proof competent and material. The use of reasonable diligence certainly did not require that plaintiff should admit the affidavit even if the same counsel who presented it to the court and secured the continuance should now be able to show that the evidence would not have been competent. The cause was continued against plaintiff's will, and if the court was in error plaintiff was not chargeable with it. The case was not at issue and was not brought to issue until March, 1885. In the meantime thirteen replications were filed to the above additional pleas. Rejoinders to some and replications to others were filed. Some demurrers were sustained and some were taken under advisement by the court. When the cause was reached at the January term, 1885, it was passed because not at issue.

At the same term defendants filed six additional special pleas, and afterward withdrew the seven additional pleas first filed, and this disposed of the demurrers under advisement. The pleading went on until finally all pleas but the

general issue were withdrawn, and it was stipulated that all
defenses might be made under that plea. At the May and
September terms, 1885, the cause was not reached for trial.
Between these terms the defendant Edward R. Knowlton
died, July 21, 1885, insolvent, and his estate paid a dividend
of eight and one-tenth cents on the dollar, which was cred-
ited on these claims. At the January term, 1886, the sur-
viving defendant, Andrew Dillman, moved for a change of
venue, which was allowed, and the venue changed to Liv-
ingston county, where, at the May term, 1886, a jury was
waived, no defense was made and judgment was entered.
Execution was issued May 21, 1886, and $6,122 was realized
to apply on the judgment. Andrew Dillman had been the
owner of property before this time sufficient to satisfy the
note, but at the time judgment was obtained no more could
be collected than was collected. There was no lack of dili-
gence in the proceeding on the part of plaintiff. Such delay
as occurred was due to much pleading, and the defendants
were privileged to set up defenses even if none were subse-
quently made at the trial.

The second note matured July 1, 1885, and before its
maturity the makers obtained an injunction against its col-
lection, and the injunction was in force until February 20,
1886. Suit was begun on the note April 12, 1886, against
Andrew Dillman, the other maker having died as above
stated, and the summons was returnable to the May term,
1886. The declaration was filed only five days before that
term, and it is insisted that this was negligence on the part
of plaintiff in the prosecution of that suit. Before this time
the court, at the January term, 1886, had ordered a special
term commencing April 26, 1886, for chancery business
only, and had ordered that such chancery business should
continue through said May term, subject to interruption by
the criminal calendar, and if the chancery and criminal
calendars should be completed by June 14th, a calendar of
causes in which a jury had been waived prior to the order
should be called, but that there should be no law trial cal-
endar for jury cases at said term. On the first day of the

May term, and before default day, the appearance of the defendant was entered by counsel, so that certainly no default could have been taken if the declaration had been filed earlier. No trial could have been had at the term on account of the order of the court.

But the question is not material, since the defendant was hopelessly insolvent at that time. Default day at the May term was May 19th, the same day that the judgment was entered in Livingston county under which all his property, subject to execution, was taken. The argument here is that plaintiff, by getting default May 19th, could have got execution quicker than he could get it from the foreign county on the judgment in his favor, the same day, and in that way might have got ahead of himself. Such a competition would have benefited nobody, as the money realized under the execution from Livingston county was applied on the obligation of the same persons, and it could make no difference to the guarantor of both notes which note it was applied on.

At the September term, 1886, the suit on the second note was not reached for trial, and at the January term, 1887, the defendant took a change of venue to Livingston county where, at the May term, 1887, he withdrew his appearance and judgment was entered.

Three executions were successively issued to the sheriff of Will county on the judgment and were each returned "no property found."

We see no reason for holding that plaintiff in error was released as guarantor of either of the notes.

The transfer alleged to be fraudulent as to creditors and made the basis for the attachment consisted of a bill of sale made by plaintiff in error to his wife of household and personal property. It was shown by his own declarations to have been made merely to prevent creditors from taking the property. The evidence justified the finding of the court on that issue.

The judgment will be affirmed.