WARREN SPRINGER

*v.*

ERNST PUTTKAMER.

*Filed at Ottawa January 20, 1896.*

1. EVIDENCE—*when return nulla bona not required to establish insolvency.* Proof of return of an execution *nulla bona* is not indispensable in order to establish that a suit against the maker of a note would have been unavailing, if brought before suing an endorser.

2. SAME—*what will establish insolvency of maker of note.* Insolvency of the maker of a note is established *prima facie,* so as to excuse suit against him before suing an endorser, by showing executions in favor of other creditors, aggregating a large sum, returned by the sheriff unsatisfied, and that a large deficiency decree, rendered against him on foreclosure of a mortgage on such maker's personalty, stands unsatisfied.

*Springer* v. *Puttkamer,* 58 Ill. App. 675, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

ROSENTHAL, KURZ & HIRSCHL, for appellant.

STEIN & PLATT, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Leroy Payne executed three notes payable to the order of Warren Springer, dated May 29, 1893, each for $500, due thirty, forty-five and sixty days, respectively,—July 1, 16 and 31. Springer indorsed these notes over to the

appellee, Ernst Puttkamer, and this action was brought on February 24, 1894, against Springer, as endorser of the promissory notes, to recover the amount due thereon.

It was alleged in the declaration, that when the promissory notes became due and payable, Leroy Payne, the maker, had become and was wholly insolvent and unable to pay the amount of said notes or any part thereof, and has continued insolvent, and has not paid the amount of said notes, or any part thereof, to the plaintiff; that it is and has been impossible, at any time since the notes became due and payable, to collect the same, or any part thereof, by legal proceedings against Payne, and that any such legal proceedings, at any time since the maturity of said note, would have been wholly unavailing.

Section 7, chapter 98, of our statute entitled "Negotiable Instruments," provides: "Every assignor * * * of every such note * * * shall be liable to the action of the assignee thereof, * * * if such assignee shall have used due diligence by the institution and prosecution of a suit against the maker * * * for the recovery of the money or property due thereon, or damages in lieu thereof: *Provided*, that if the institution of such suit, would have been unavailing, or the maker had absconded or resided without or had left the State when such instrument became due, such assignee * * * may recover against the assignor * * * as if due diligence by suit had been used." Here the maker of the note resided in the State when it became due, and no suit was brought against him. In order, therefore, to maintain this action against the endorser it devolved on the plaintiff (the endorsee) to prove that a suit against the maker would have been unavailing,—in other words, that the maker was insolvent.

For the purpose of proving insolvency the plaintiff put in evidence an execution of the Superior Court of Cook county for $4369.80, in favor of one Connolly; one for $2025 and another for $3025 in favor of one Brosseau,—

all dated June 26, 1893. These executions were placed in the sheriff's hands and by him thus returned: "I have demanded of the within named defendant that he pay this execution, or that he surrender of his estate goods or chattels, lands or tenements, on which to levy to satisfy this claim, which he failed to do. I therefore return this writ no part satisfied, this 25th day of September, 1893." Plaintiff further put in evidence an execution for $2000 and another for $1000, both dated June 28, 1893, in favor of one Catherwood, which were returned September 26, 1893, the same as were the above. After the return of the two executions last above mentioned, *alias* executions were issued and levied on certain lots, but returned unsatisfied March 7, 1894. An execution for $12,114.11 was also put in evidence in favor of the Richelieu Hotel Company, dated January 6, 1894, and returned April 6, 1894, the same as the first executions above named, with the following addition, which was omitted from the others: "And not being able to find any property in my county." There were also put in evidence executions in favor of one McNarney for $3511.81, dated January 12, 1894, and in favor of one Bryant for $6844.69, dated January 29, 1894, which were returned thereafter the same as the last. The record also shows that a receiver was appointed on a bill filed June 23, 1893, to foreclose a $35,000 chattel mortgage on horses and vehicles, and it also shows that the receiver was put under a $50,000 bond, and authorized to receive bids until October 16, 1893. A deficiency decree for the sum of $6708.08 was subsequently rendered. An execution in favor of one Wehrheim, of June 23, 1893, for $5775 is shown against Leroy Payne and Cordelia B. Payne. The same was satisfied July 15, 1893, by plaintiff's attorney to the extent of $2645, and was levied September 14, 1893, on household furniture of the defendant, which was subsequently replevied.

It seems to be conceded in the argument that if the executions had been returned by the sheriff *nulla bona*

the evidence would have been sufficient to establish insolvency. In a case of this character we do not think a return of *nulla bona* was indispensable. As said before, as the plaintiff did not sue the maker on the maturity of the notes, in order to recover against the endorser he was required to establish, *prima facie*, the insolvency of the maker. This might be done in different ways. He might show that the maker had no property whatever, and hence was insolvent; or he might prove that all the property owned by the maker was mortgaged for more than it was worth; or he might show that different creditors had procured judgments against the maker, issued executions, placed them in the hands of the sheriff, and that the sheriff had not been able to find property and had returned the executions unsatisfied. There may be other modes in which insolvency might be established. (See *Pierce* v. *Short*, 14 Ill. 144.) Where the personal property of a person is mortgaged for a large amount, as was the case here, and proceedings are instituted to foreclose the mortgage and the property passes into the hands of a receiver, and at the same time a number of large judgments are rendered against the party, and the sheriff is unable to collect these executions and returns them unsatisfied, such facts, undisputed, are in our opinion sufficient to establish insolvency, although the sheriff may not endorse on the execution "no property found," as, ordinarily, he should do when he has demanded and the defendant in execution has refused to turn out property, and an execution is returned unsatisfied. Here were judgments amounting to over $17,000 rendered against the maker before either of the notes in controversy became due, upon which executions were issued and placed in the hands of the sheriff, but nothing was collected and they were returned unsatisfied. In addition to this, after the maturity of the notes, and before this action was brought, judgments were rendered against Leroy Payne amounting in the aggregate to the sum of $29,000, upon

which executions were issued and placed in the hands of the sheriff, and by him returned no property found, unsatisfied, except on one execution a partial satisfaction was entered by plaintiff's attorney. Moreover, the record shows the personal property of the maker of the notes was mortgaged to secure an indebtedness of $35,000, a bill filed to foreclose the mortgage, a receiver appointed, and in the end a deficiency decree rendered for over $6000. These facts were, in our opinion, sufficient to establish, *prima facie*, that a suit against Payne, the maker of the notes, would have been unavailing. Had suit been brought and judgment rendered against the maker of the notes, and executions issued, they no doubt would have been returned unsatisfied, as executions were in favor of other parties.

In *Pierce* v. *Short*, 14 Ill. 144, in discussing a question of this character, it is said (p. 146): "It appeared in evidence that the maker had no property subject to seizure on execution. His household goods were covered by a chattel mortgage for their full value, and the only other property in his possession was by law exempt from execution. It was not incumbent on the plaintiff to proceed to judgment against the maker and have an execution levied on the horse and buggy. The mere possibility that the debtor might not insist on his legal right to retain this property as exempt from execution would not render such a proceeding necessary. The plaintiff showed, *prima facie*, that a suit against the maker would have been unavailing, and consequently that he had a good cause of action against the defendant." We think the evidence brings the case within the rule in the case cited, and the instruction of the court directing the jury to find for the plaintiff was correct.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*