Curtis et al. *v.* Gorman.

---

JOHN CURTIS and NATHAN LAND, Plaintiffs in Error, *v.* HENRY D. GORMAN, Defendant in Error.

ERROR TO ST. CLAIR.

Where the proof shows that if an action commenced against the maker of a note had been duly prosecuted, the amount might have been recovered of him, the assignor will not be liable. A note intended to be given in settlement of such suit, and left with a depositary, who has no power to act in the premises, but which is not accepted, is not the just subject of an action.

THIS was an action of assumpsit. The first count alleges, that on the 3rd of January, 1855, J. C. Foster made a note for two hundred dollars, payable to Gorman twelve months after date; that Gorman then indorsed and delivered said note to Joseph Barnes, and Joseph Barnes, on the 22nd day of March, 1855, indorsed and delivered said note to plaintiff; that Foster was wholly insolvent when note became due, whereby defendant became liable to pay it, etc., and undertook, etc., in the usual form.

Second count alleges the making and indorsing in all respects as first count, and that after said note became due, and before the next term of the St. Clair Circuit Court, the plaintiff, with the consent and at the request of defendant, forebore bringing suit against Foster, under the express agreement of defendant and Foster to execute and deliver a promissory note to plaintiff, for the amount of said note, with Foster as principal and Gorman as security, which agreement defendant failed and refused to fulfill, and Foster then and there absconded from the State of Illinois, and has ever since been absent from said State, whereby, etc., as in first count.

Third count is in the usual form for money lent, paid, and had and received.

Fourth count alleges the making and indorsing note as in first count, and is in all respects like second count, except it alleges that immediately after the first term of court, Foster absconded from this State, whereby, etc.

Fifth count alleges the making and indorsing of note as in first count, and that plaintiff, in the name of Edward G. McClure, instituted and prosecuted a suit on said note against Foster, at the first term of St. Clair Circuit Court, after said note became due, and process was served on Foster, and a declaration filed in said case more than ten days before said term, and at said term it was expressly agreed between said plaintiffs, said Foster and Gorman defendants, that said suit should be dismissed at the costs of said Foster, which was then and there done, and that Foster should have to the first of August then next to pay the amount of said note, and that before said time expired, Foster absconded from the State, and ever since has remained out of this State, whereby, etc.

Sixth count alleges that on the 13th day of March, 1856, the defendant, with J. C. Foster, made and delivered his promissory note to plaintiffs, and jointly and severally undertook, etc., to pay plaintiffs, on or before the 1st day of August, 1856, $211.66, for value received, in the usual form. The breach is in the usual form.

Defendant plead the general issue. A trial by jury was had

at the fall term, 1857, before SNYDER, Judge—verdict for defendant. Motion for a new trial was made by plaintiffs, which was overruled, and judgment given against plaintiffs for costs.

Plaintiffs filed their bill of exceptions, which shows that on the trial they introduced a promissory note in evidence, as described in first count of declaration, and indorsed as therein stated.

Plaintiffs proved by N. Pensoneau, that Foster and his family are now living in Washington City, D. C., and that Foster had real and personal property in St. Clair county in March, 1856.

*A. J. McNail,* of Mascoutah, swore that Foster lived at that place in this county, and had sufficient property to satisfy this note if a judgment had been obtained on it at the March term, 1856, of said court; that Foster left in the latter part of the summer, or in the fall of 1856 ; he sold off his property and said he was going to Belleville, but left in the night, and took the train of the O. and M. Railroad, at Trenton, with his family, and has not been back since. Witness has a memorandum, not now with him, by which he can tell the day Foster left. Plaintiffs then offered to prove by this witness that Foster, at the time said note fell due, and when he left, was largely indebted to various persons, which testimony was excluded by the court, and exception taken at the time. Witness stated, on cross-examination, that Curtis, one of the plaintiffs, said, after the suit in the Circuit Court was dismissed against Foster, that if the suit had not been withdrawn, their note would have been collected ; that they were to have till fall to pay the note, and he was afraid by that time neither Foster nor Gorman would be good, and they intended to look to Horner, their attorney, for the amount of the note ; that the suit was dismissed without his (Curtis') order.

*A. Griffin* testified that Foster left Illinois in the spring of 1856, in May ; that during the spring term of the St. Clair Circuit Court, Foster came into the store of witness and his brother Thaddeus, and said he was sued by Land & Curtis, and had settled it by getting time till August ; he then left a note like this (described in last count of plaintiffs' declaration) ; his name was signed to the note ; he said he would get Gorman to come and sign it, and after it was signed, told witness to give it to Mr. Horner, attorney for plaintiffs ; a few days afterwards, Gorman came into the store and signed the note ; after Mr. Foster left, Mr. Horner called at the store, with Wm. H. Underwood, and inquired for the note ; it was shown by witness to Horner, who examined it, and said Foster was to give good security, and asked witness to sign the note, which he refused to do, saying he would keep the one he had ; Horner then refused to take the

note, and left; witness did not hear Horner say anything about seeing plaintiff before he took the note; sometime afterwards Gorman came and got the note and destroyed it, being informed by witness that Horner had refused to take the note.

After this testimony, the plaintiffs' attorneys stated, under the testimony, they would not now insist that the claim could not have been made out of Foster if a judgment had been recovered at the first term after the first note fell due.

*A. J. McNail* being recalled, testified, that on examining a memorandum, he was satisfied now that Foster left Illinois between the 22nd of April and the 1st of May, 1856.

Plaintiffs then introduced, in evidence, the papers in the suit brought in the name of McClure against Foster, at the March term, 1856, of the St. Clair Circuit Court, and the order made on the third day of the term of said court that said suit be dismissed at Foster's costs.

*H. H. Horner* testified, that he was attorney for Land & Curtis in said suit, instituted in the name of McClure; that said suit was compromised by an agreement made with Foster, which was afterwards approved by Land & Curtis, to take a new note for the amount due on the old note, to be signed by Foster and Gorman, and other security, which new note was to be left at Griffin's store, when executed, for plaintiffs; that witness wrote the note described by Griffin, and Foster signed it and took it away to be signed by Gorman, the indorser, and by other security as aforesaid; sometime afterwards witness called, with Wm. H. Underwood, at Griffin's, to get the note, and found the note there as described by Griffin; witness requested Griffin to sign the note, which he declined doing, and witness therefore refused taking the new note, saying he did not know the responsibility of Gorman; thinks he remarked, in the presence of Mr. Griffin, in the store, that he wanted first to see Land & Curtis; after witness saw them, who consented to take the new note as it was; afterwards witness took the old note to Griffin, ready to be delivered up; sometime afterwards this suit was brought. Witness further stated, that he never authorized Griffin to return the note left with him, to Gorman or Foster.

*W. H. Underwood* testified, that he was attorney for Foster in the compromised suit, and went with Horner to Griffin's store twice, as stated by him. When Horner left Griffin's the first time, witness understood from him that he was to see Land & Curtis about the matter before giving up the old note and taking the new one. Horner refused to take it then, but thinks Horner spoke of seeing Land & Curtis as he came out of the store, and probably Griffin did not hear the remark, which was not addressed to him. Witness is sure, however, that Horner did not

authorize Griffin to return the note left with him to Gorman. The suit was dismissed with the understanding that Foster and Gorman and good security should be given on the new note, which embraced the amount due on the old one.

*Thaddeus Griffin*, for defendant, testified that he was at the store when Horner called, both times, for the note; Horner, at the first time, refused to receive the note left there, and did not, at the second time he called, offer to return the old note. Witness thinks he heard all the conversation in the store between his brother and Horner, and did not, at the first time Horner was there, hear him speak of seeing Land & Curtis before he would take the note left there, as stated by him.

This was all the material evidence in the case. The court thereupon, on application of defendant, instructed the jury: "If they believed, from the evidence, that the plaintiffs, personally or by agent, refused to accept the note specified in the last count of the declaration, and that the same was never delivered to them, or any one for them, the law is for the defendant on that count. Unless they believe, from the evidence, that there was an agreement between the plaintiffs and defendant, that the suit in favor of *McClure* v. *J. C. Foster*, at the March term, 1856, should be dismissed, then they must find for defendant on the count in said declaration on the assigned notes."

After verdict, plaintiffs moved for a new trial, because the court excluded from the jury proper evidence offered by them; because the court gave improper instructions for defendant, and because the verdict was contrary to law and to evidence; which motion was overruled by the court, and to which decision of the court plaintiffs at the time excepted. Plaintiffs bring up said case by writ of error, and assign for error:

1st. The court below erred in excluding from the jury proper evidence for plaintiffs.

2nd. In giving for defendant improper instructions.

3rd. In refusing plaintiffs a new trial.

UNDERWOODS, Attorneys for Plaintiffs in Error.

G. TRUMBULL, for Defendant in Error.

SKINNER, J. The plaintiffs declared in assumpsit upon a promissory note executed by the defendant to the plaintiffs, and also upon an assignment of a promissory note executed by the defendant to the plaintiffs, made by one Foster to the defendant.

Plea, *non assumpsit*.

The evidence showed that the plaintiffs commenced suit in due time upon the assigned note against the maker, and that such

suit, by arrangement between the maker and the plaintiffs, the assignees of the note, was dismissed, but to which arrangement the defendant, the assignor, was not a party, and that the note, by due diligence, could have been collected of the maker. From the evidence in support of the counts upon the note executed by the defendant to the plaintiffs, it appeared that the defendant, with said Foster as his security, made their joint and several promissory note payable to the plaintiffs, intended to be in settlement of the note executed by Foster to the defendant, and which he had assigned to the plaintiffs, and left the same with one Griffin, to be delivered to the plaintiffs, in settlement of the assigned note; that the agent of the plaintiffs refused to accept the note so left with Griffin, and that the defendant, being informed of the refusal, took the note from Griffin's custody and destroyed it.

The note being left with Griffin as a mere depositary, having no power to act for the plaintiffs, could not take effect as a binding contract or promise without the consent or acceptance, express or implied, of the plaintiffs; and their consent and acceptance being rebutted by the evidence, no action could be maintained upon the instrument.

The plaintiffs, under the evidence, were not entitled to recover.

*Judgment affirmed.*