ELIAS NIXON, Plaintiff in Error, *v.* PETER WEYHRICH,
Defendant in Error.

ERROR TO TAZEWELL.

In order to recover of the indorser of a note, it must be made to appear, that the
maker was sued in good time, and that collection of the judgment against him
was pursued with proper diligence; and if from the want of diligence the money
was not, when it might have been, made from the maker, the assignor is released.
The diligence required in making the collection from the maker of the note, is
such as a prudent man would use in the conduct of his own affairs.
If by the exercise of reasonable diligence, property of the maker of a note might
have been found, sufficient to satisfy the debt, then the indorser is released.

THIS was an action of assumpsit, brought by Weyhrich against
Nixon, at January term of the Tazewell County Court, A. D.
1858, to recover a sum of money against him as an indorser of
a promissory note.

The plaintiff below sets out in his declaration that one Paul
Goodale, on the 8th day of June, 1857, gave his note for the
sum of $150 to said Nixon, payable on the 15th day of August,
1857, for value received; and that Nixon, before it became due,
indorsed the note and then delivered it to the plaintiff; that at
the first term of the court at which Goodale could be sued
thereon, the plaintiff sued him and recovered judgment for the

sum named in the note, and that immediately thereafter, execution was issued on said judgment, against said Goodale, and delivered to the sheriff of Tazewell county, where Goodale resided, and that on the 23rd day of December, 1857, the sheriff returned the said execution, indorsed with the sum of $20.60, made by sale of horses, and no more property found; avers due diligence against Goodale, and that he could not collect the debt or any part of it, except the $20.60, and that therefore, the defendant, Nixon, was liable to pay him the amount of the note and interest, which he afterwards promised to pay, but which he refused to do; and the plaintiff added the common counts in his declaration.

The defendant pleaded specially, that since the suit was instituted against Paul Goodale, and the execution was issued against him, and the sale of the horses named, and on the day of the date of the execution, he had in said county, other property liable to said execution, consisting of lands and personal property; also, promissory notes and other sums due and owing to him, other and different property from the horses so sold, all of which the plaintiff, Weyhrich, then and there had notice, and that, therefore, he had not used due diligence and ought not to recover, and the defendant also plead the general issue.

On these pleas, the plaintiff, Weyhrich, took issue, and on the trial, read the record of a judgment in favor of Weyhrich on said note against Goodale, rendered at the October term of the Circuit Court of Tazewell county, 1857, for the sum of $155 and costs, and the execution issued thereon, with the indorsement, " came to hand the 2nd of November, 1857, and levied on one bay and one sorrel horse, 1st day of December, 1857; and received December 12th, on the within execution of sale of horses, $20.60; and no more property found," and showed that the same was then so returned by the sheriff. He then proved by the deputy sheriff, that he, (the deputy,) had called four times on Goodale, the said Goodale being a householder, residing with his family, at his residence, in Tazewell county, on the land hereafter named, and demanded property to satisfy the execution, and that Goodale turned out the property levied on by said execution, and so indorsed on it, and denied having any other property subject to execution, and that he knew of none.

On cross-examination, he said, there was other property, horses and wagons, in Goodale's possession, but Goodale represented that they belonged to other men, and that Goodale showed him some $1,200 worth of notes, on one and two years, which he said were on good men and that he would sell them to pay this debt to Weyhrich. The plaintiff further proved, by

39

one Parker, that as plaintiffs' attorney and at his instance, he made search of the records of the county, for real estate of Goodale, whereon to levy, and that he found two hundred and forty acres of land belonging to Goodale, subject to a mortgage of $3,200, which he thought, and so advised Weyhrich, was all the land was worth, but that he was not personally acquainted with it and did not know its value, and that he was advised that Paul Goodale lived on one eighty acre tract, and that he had paid $1,000 on the mortgage, and that the mortgagee had released the eighty acre tract from the mortgage.  The note of Paul Goodale, dated 8th June, 1857, for $150, and indorsed by Nixon, the defendant, was read in evidence, and plaintiff rested.

Nixon then gave evidence, showing title in fee in Paul Goodale to the north-east quarter of Sec. 7, Town. 22 north, range 4 west, and the east half of south-west quarter of Sec. 25, Town. 22 north, range 5 west, subject to a mortgage dated October, 1856, for $3,200, to one Rupert, and that on the 21st day of September, 1857, $1,000 of the mortgage was paid by Goodale, and that one eighty acre tract of the quarter section was released by Rupert on the record, from the lien of the mortgage, on the 1st September, 1857.

The defendant then called one *Austin Melton*, who testified that he was well acquainted with the land named, that it was all good improved prairie, and was all worth from $25 to $30 per acre, and that Goodale resided on the eighty acre tract, and that he had three head of cattle, which he had raised, worth $60, and had a lot of hogs and farming utensils, but could not fix a value on them; one plow, worth eight dollars, and that he had two good horses and a new two-horse wagon, all together worth about $280, and one old two-horse wagon, worth ten dollars; that he lived a next neighbor to him, and that Goodale had all in his possession at his residence, and he used and claimed to own them ever since the witness knew them, which was about two years; no one else claimed them, and they were at his residence, in Tazewell county, at the date of the execution, and up to the time of the trial, and that these horses named by the witness were other horses, beside the ones levied on by the sheriff and sold under the execution.

*Emanuel Purcell* testified, that he knew Paul Goodale's property, and the horses and wagon named by the witness Melton; that the horses had belonged to Goodale about two years, and that the wagon was new; that Goodale offered to sell him one of the horses in the fall of 1857, and that the horses and wagon were worth about $285.  He lived in the neighborhood, and never heard of any other person having the horses in possession or claiming them.

*Stewart Hite*, also a neighbor of Goodale, testified that he knew the cattle named by Melton, and the other property, and that the cattle and horses and the other property had always been on the farm of Goodale and in his possession, since he knew him, which was about a year; that Goodale had always claimed to own them, used and attended to them; that the cattle were worth about $60, and the horses and wagon were worth about $285, and that Goodale had also a set of harness for two horses. The witness knew of Goodale putting in winter wheat with a drill, on his farm, in the fall of 1857; he sowed about twenty acres, which, at the time of the trial, looked well, and that it was worth three dollars per acre. He knew the land named in the mortgage of Goodale to Rupert very well, it was good and improved prairie, and was worth now in cash $20 per acre, and would bring, on twelve months credit, $22.50 per acre, and was worth $20 per acre in cash, at the date of the execution; and that all of said property, real and personal, was, and had been since he knew it, in Tazewell county; and that the horses named by him were other than the ones levied on by the sheriff and sold under execution.

*Tice Smith* was called by plaintiff, who testified that in October, 1857, Goodale owed him a debt, and he took these horses on the debt; that he bought them in Pekin, where Goodale had brought them, and after the purchase he let Goodale keep them in his possession and take them home with him to use, Goodale agreeing to give him four dollars per month for the use, and that he had paid him for three months use of the team, which was, at the time of the trial, in Goodale's possession; which was all the testimony given in the cause.

The plaintiff asked the court to instruct the jury,

That if the plaintiff prosecuted the maker of the note at the first term after the note was due, and recovered judgment upon it at the said term, and had his execution issued to the sheriff of Tazewell county, (the county where Goodale resided,) and the sheriff returned the said execution, in whole or in part, no more property found, then the plaintiff is entitled to recover, unless the defendant had other property liable to execution, and that the plaintiff, or his agent, or his attorney knew of it.

That under the issue in this case the defendant must not only prove that the said Goodale had other property liable to execution, but that the plaintiff knew it, or his attorney—and if the defendant fails to prove that the plaintiff knew of said Goodale having said property, they must find for the plaintiff, even if they believe he had property liable to execution, out of which the debt might have been made. Which instructions were given by the court, and excepted to by the defendant.

The defendant asked the court to instruct the jury,

That if the jury believe, from the evidence, that Goodale had in his possession, liable to execution, personal property in said county which belonged to him, while the execution was in the hands of the officer, sufficient to satisfy the same, they will find for the defendant.

If the jury believe, from the evidence, that Paul Goodale had real estate in said county sufficient to satisfy the said execution, liable to execution, while it remained in the hands of the officer, they must find for the defendant.

If the jury believe, from the evidence, that Goodale sold the horses and wagon to Smith absolutely, and still kept possession of them, the sale is absolutely fraudulent and void, as against all creditors, and that they still remain subject to the execution, notwithstanding the sale.

If the jury believe, from the evidence, that the sheriff demanded property of Goodale to satisfy said execution, it was his duty to turn out the same to the sheriff, and if he did not then do it, he could not afterwards, if the property had been levied upon by the officer, claim it, under the statute, as exempt from execution.

The court then modified the first, by adding, "if they are satisfied that the plaintiff knew of said property;" and modified the second instruction of the defendant, by adding, "if the jury are satisfied that the plaintiff knew of said property;" to which modifications the defendant objected, and the court overruled the objection, then gave them all as modified, to which modification the defendant excepted; and the plaintiff also excepted to the giving of the defendant's instructions.

The jury found for the plaintiff, $151.85. The defendant then moved the court to set aside the verdict and for a new trial, because,

The finding of the jury was contrary to the law and evidence.

The finding of the jury was contrary to the instructions of the court.

The instructions of the court, given for the plaintiff, are contrary to the law, and the court improperly modified the defendant's first and second instructions.

The court overruled the motion to set aside the verdict and for a new trial, and rendered judgment for the plaintiff for $151.85, to which the defendant excepted.

B. S. PRETTYMAN, for Plaintiff in Error.

A. L. DAVISON, for Defendant in Error.

CATON, C. J. This was an action brought against Nixon, as the indorser of a promissory note. The proof shows the recovery of a judgment against the maker, upon which an execution was issued, which was returned satisfied in part, and no property found to satisfy the balance. The proof in the case tends very strongly to show that the maker, at the time the execution was in the hands of the sheriff, was in the actual, open and notorious possession of an abundance of property, both real and personal, subject to the execution, out of which the amount thereof might have been made. The court instructed the jury that the plaintiff was entitled to recover in this action, unless he knew the maker had property out of which the balance due on the execution might have been made. This instruction we think was wrong. The statute, giving the right sought to be enforced by this action, is this : "Every assignor or assignors, or his, her or their executors or administrators, of every such note, bond, bill or other instrument in writing, shall be liable to the assignee or assignees thereof, or his, her or their executors or administrators, if such assignee or assignees shall have used due diligence by the institution and prosecution of a suit against the maker or makers of such assigned note, bond, bill or other instrument in writing, as against his, her or their heirs, executors or administrators, for the recovery of the money or property due thereon, or damages in lieu thereof. *Provided*, that if the institution of such suit would have been unavailing, or that the maker or makers thereof had absconded or left the State, when such assigned note, bond, bill or other instrument in writing became due, such assignee or assignees, or his or her executors or administrators, may recover against the assignor or assignors, or against his or their heirs, executors or administrators, as if due diligence by suit had been used." It was admitted, by the instructions asked and given for the plaintiff, on the trial below, that the simple institution and prosecution of a suit to judgment, and the issuing of an execution against the maker, was not necessarily and of itself, conclusive evidence of due diligence to collect the amount of the maker, for the court instructed that if the plaintiff knew of property belonging to the maker, out of which the money might have been made, then he had not used due diligence, and could not recover in this action. So far as it went this was undoubtedly right, but it did not go far enough. The plaintiff was bound to prosecute a suit against the maker, with due diligence, not only to judgment but also to satisfaction. The intention of the law is that the amount shall be made of the maker, if by reasonable diligence that can be done. Due diligence means reasonable diligence ; it means such diligence as a prudent man would exercise in the conduct

Nixon *v.* Weyhrich.

of his own affairs. If for the want of such diligence the money is not collected of the maker, it is designed that the loss should fall upon the holder and not on the assignor. And this should be so. The hands of the assignor are tied up ; he has no control over the proceedings or the execution. Were the rule otherwise, by the neglect of the holder the loss of the debt might be thrown upon the assignor, for although he should go and pay up the amount at once, before he could get judgment against the maker to indemnify himself, the property which was ample when the first execution was out, might be beyond his reach. The instruction should have been, if the plaintiff, by reasonable diligence, might have known of property of the maker sufficient to satisfy the debt, then he could not recover.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*