DAVID CHALMERS, Plaintiff in Error, *v.* THOMAS C. MOORE, Defendant in Error.

ERROR TO PEORIA COUNTY COURT.

Where it is designed to recover against the indorser of a note, action must be brought against the maker, at the first term of any court having jurisdiction, although there may not be ten days between the time the note falls due, and the commencement of the term.

As an evidence of diligence against the maker of a note, an execution should be levied on goods, and the right of property therein tried, if the goods are in the possession of the maker.

Diligence requires the issuance of an execution in the county where the judgment shall have been rendered.

Property in the possession of the maker of a note, should be sold subject to the claims of others, so that the rights of parties may be ascertained.

An execution should not be returned before its life is extinct, if diligence is to be shown under it.

THE declaration was in assumpsit by Thomas C. Moore second indorsee, against David Chalmers, indorser; first count averring due diligence by suit, etc.; second count, insolvency when notes fell due, etc.; and the common counts.

There was a trial by jury; motion for a new trial; judgment for $213.69 and costs.

Execution to Knox county, dated July 17th, 1858. Received by sheriff, July 20th, 1858. Returned, no property found. Return not dated. Writ not marked filed. Alias execution to Peoria county, dated August 14th, 1858. Returned August 14th, 1858, no property found. Clerk testified that execution to

Knox county was returned to his office before the alias was issued.

Objections of defendant to reading said pleadings, record and proceedings, for that due diligence in the commencement and prosecution of suit had not been shown, and for that no writ of execution had remained in the hands of the proper sheriff for the time required by law to charge an indorser. Objections overruled, exception taken, and pleadings, record and proceedings read.

Deposition of *Miles Smith* shows, that the goods in the shop of makers of note had all been mortgaged. Knew of no property liable to execution. J. W. Moore owns house and lot, worth $450 or $500. Has lived there four or five years. Thinks suit would have been unavailing. Their stock of goods was worth $150 or $200.

Deposition of *Robert L. Hannaman* shows, that makers of note were much embarrassed on 23rd March, 1858. Don't think any part of note could have been made by suit. February 23rd, 1858, I filled up mortgage for $224.54 to J. B. Smith, on the stock of goods owned by the makers. Know of no other property liable to execution. I held claim for $40 against J. W. Moore since 1841, which I have been unable to collect by law. J. W. Moore had lot and house, worth $400 or $500, where he and his family live as their homestead. Don't know how much makers owe.

Testimony of *Elizabeth . Chalmers* shows, that between spring and winter of 1857, makers of note bought about $800 worth of goods of indorser, Chalmers, and his predecessors, Quackenbush & Gillis. Paid about $400 or $500. Makers were considered good and prompt pay. Note sued on was given for part of such purchase. Judgment for $157 more rendered to-day.

CHARLES C. BONNEY, for Plaintiff in Error.

JONATHAN K. COOPER, for Defendant in Error.

BREESE, J. The record in this case shows an action by the assignee against the indorser or assignor of a promissory note.

Ch. 73, section 7, (Scates' Comp. 291,) provides that every assignor of every promissory note, bond, bill or other instrument in writing, shall be liable to the action of the assignee or assignees thereof, or his or their executors and administrators, if such assignee shall have used due diligence, by the institution and prosecution of a suit against the maker thereof for the recovery of the money or property due thereon, or damages in lieu thereof, with the proviso, that if the institution of such suit

would have been unavailing, or that the maker had absconded or left the State when such assigned note became due, such assignee may recover against the assignor as if diligence by suit had been used.

The note fell due March 23rd, 1858, and on the 21st May, 1858, a summons was issued out of the County Court of Peoria county against the makers, directed to the sheriff of Knox county, where they resided, which was duly served and a judgment by default taken against them, June 8th, 1858, for $195.41. Execution was issued to Knox county only, July 17th, 1858, which was received by the sheriff of that county July 20th, and returned no property found. The return bears no date, nor is the *fi. fa.* marked filed. On the 14th August, 1858, an *alias fi. fa.* issued to Peoria county, which was returned on the same day no property found. The clerk testified that the *fi. fa.* to Knox county, was returned to his office before the alias writ dated 14th August, was issued.

This court judicially knows that there was a regular term of the County Court of Peoria having jurisdiction of this cause, on the first Mondays of every month. The exercise of due diligence then, would have required the suit to be brought to the April term as the note fell due 23rd March. This would have given the defendants a continuance to the May term, at which term, final judgment could be had. But suit was not commenced until the June term—the third term after the maturity of the note.

It was decided in *Lusk* v. *Cook*, Breese R. 53, so far back as 1823, and never since departed from, that where an assignee seeks to recover of an assignor on the ground that he has used due diligence to obtain the money of the maker but has failed, he must show that he commenced his action against the maker, at the first term of the court, which happened after the note became due, provided there be proper time for the service and return of the writ. Though in this case there was not time for the issue and return of a writ to the April term, yet a writ might have issued and been made returnable to that term. And why was the May term permitted to pass? *Bestor* v. *Walker*, 4 Gilm. R. 3 ; *Allison* v. *Smith*, 20 Ill. R. 106.

We do not know but that a judgment at the May term might have produced the money. There is no evidence proving satisfactorily, that the makers had not the means of paying in the spring of 1858 as late as May. It is all opinion. The facts stated are that in February, 1858, that a mortgage was filled up for $224.54 to J. B. Smith on the stock of goods then owned by the makers of the note. Whether this mortgage was ever in fact executed does not appear, nor that it was for a valid

24

debt, nor that it had been recorded, nor that it held the goods in any way. The mortgage at any rate should have been produced. *Roberts* v. *Haskell*, 20 Ill. R. 63. A levy should have been made on these goods, and the right of property tried. *Roberts* v. *Haskell*, 20 Ill. R. 59. The goods were worth one hundred and fifty or two hundred dollars, and were all in the visible possession, and *prima facie* ownership of the makers of the note, in which the assignee did not think proper to disturb the defendants, or out of them, attempt to make less than two hundred dollars, the amount of his money against them, and to satisfy which, they were apparently liable.

We have said in *Nixon* v. *Weyhrich*, 20 Ill. R. 600, that in order to recover of the indorser of a note, it must be made to appear that the maker was sued in good time, and that collection of the judgment was pursued with proper diligence, and if from the want of diligence, the money was not made of the maker when it might have been, the assignor is released.

We think too, that the first execution in this case should have been issued to Peoria county, and the inability of the debtor to satisfy it, proved by the sheriff or other officer holding the *fi. fa.* or other competent evidence. In *Sanders* v. *O'Bryant*, 2 Scam. R. 370, it was held that in order to show due diligence it is clearly the duty of the assignee to prove that within the county where the suit was commenced, he had used all the means the law gave him to collect the money. This the appellee has wholly failed to do. So as to the execution to Knox county, why was not the sheriff or assessor of that county called to speak of property? But above all, why was not the mortgage produced and proved to be for a subsisting *bona fide* debt? Too much looseness, and neglect of due diligence is apparent in this case. The first *fi. fa.* was not issued until near forty days after the. rendition of the judgment, and though having ninety days to run, was returned in twenty-eight days, unaccompanied by any proof that the officer had made an effort to execute it, and the alias was returned the same day it issued. We see no particular objection to this, for the sheriff, by such extraordinary dispatch, must be prepared to show that holding the writ the ninety days would have availed nothing. That burden he takes upon himself, by such a speedy return of a *fieri facias*. It might be, that before the execution had run out, the defendant had property. But enough of this. The goods and real estate should have been levied on and sold, subject to such subsisting claims as might have been against them, or the adverse right to them tried and determined.

The proof by no means shows, that a suit against the makers, if prosecuted with diligence, would have been unavailing, nor

does it show, that the one which was instituted was prosecuted with diligence. See *Bledsoe* v. *Graves*, 4 Scam. R. 384.

The judgment is therefore reversed and the cause remanded.

*Judgment reversed.*