SWIFT (WHITE, v.). See Case No. 17,557.

## Case No. 13,701.

SWIGGETT v. SEYMOUR.

[4 Biss. 220.] [1]

Circuit Court, D. Indiana. May, 1868.

NOTE—INDORSEMENT—DILIGENCE—MORTGAGE SECURITY.

1. At common law, promissory notes could not be assigned so as to vest the legal title in the assignee. The statute of 3 & 4 Anne, which is not in force in Indiana except as to "notes payable to order or bearer in a bank in this state," altered the common law rule.

2. In this state, the negotiation of promissory notes is governed by Indiana statutes. Under these statutes, notes payable to order or bearer in a bank in this state. are governed by the law merchant. Other notes are not. And as to the latter, as a general rule. the indorsee must employ due diligence by legal proceedings to collect the note from the maker before he can maintain an action against the indorser. But, to this general rule, there are several exceptions.

3. A note was indorsed in the state of Indiana to a citizen of the state of Ohio. and was secured by a mortgage, executed by the maker to the indorser, on lands in the state of Wisconsin. The maker was wholly destitute of property. subject to execution. *Held*, that the indorsee might maintain an action without first suing the maker or foreclosing the mortgage.

[This was an action on a promissory note by Seth W. Swiggett against Elisha Seymour. Heard on demurrer.]

Wm. Henderson, for plaintiff.
Gordon & March, for defendant.

McDONALD, District Judge. The declaration in this case contains four counts. The first, second, and third of these is on the indorsement of a note of one thou-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

sand dollars; the fourth is a common count. All the special counts charge that the note was executed in New York and indorsed in Indiana. The defendant is sued as indorser. The note was made by Uriah Gregory and Marion Gregory. The first and second counts allege that the makers, when the note fell due were notoriously insolvent; and, in addition to this, the third count charges that the indorsee, when the note fell due. made diligent inquiry for the makers, and could not find them.

A special plea is filed, alleging that the note was secured by a mortgage of lands in the plea described, including several lots in Green Bay, Wisconsin, and divers tracts of land described by congressional surveys but not stating in what part of North America they lie. The plea avers that these lands are worth three thousand dollars; that the mortgage was executed by the makers of the note to the defendant; and that the plaintiff had notice of all this when the note was assigned to him, but has never attempted to obtain satisfaction of the note by enforcing the mortgage lien. A general demurrer has been filed to this plea.

The plea is in many respects defective. But the point insisted on by the plaintiff, and which is the main one in the case, is this: Under the Indiana statute providing that the indorsee of a note shall have his recourse on the indorser only after "having used due diligence in the premises," must the indorsee of a note secured by a mortgage on lands in another state exhaust that security before he sues the indorser?

By the common law, promissory notes are not assignable. The statute of 3 & 4 Anne made them negotiable like inland bills. And, though the substance of this statute has been re-enacted in most of the states of the Union, it has never been adopted in Indiana. In 1818, the Indiana legislature passed an act making notes assignable by indorsement, and giving the indorsee (after "having used due diligence to obtain the money") a right of action against the indorser. Rev. Code 1818, 232, 233. This enactment has been substantially the law in Indiana ever since, so far as relates to notes not negotiable in banks in this state. As to the latter a subsequent act puts them on the footing of inland bills.

Under the act of 1818, continued in force now fifty years. many adjudications have been made by the supreme court of Indiana; so that, from these adjudications. a system of law concerning notes has grown up, which the state courts recognize, and which is binding on this court.

These adjudications have firmly established in this state the following primary general rule with its exceptions: The "due diligence," required by the statute as a prerequisite to recourse against the indorser of a note, is a prompt effort to collect it by a proceeding at law followed up to a

return of nulla bona on a fieri facias against the maker of the note. Hanna v. Pegg, 1 Blackf. 181; Merriman v. Maple, 2 Blackf. 350; Bishop v. Yeazle, 6 Blackf. 127.

To this general rule there are several exceptions. These arise from two warranties implied in every general indorsement of a note, namely that the note is valid, and that the maker is solvent. These exceptions are as follows:

1. No diligence to collect the note by a legal proceeding is required, if, at the time when suit ought otherwise to have been instituted, the maker was wholly destitute of property subject to execution. Formerly, the supreme court of Indiana employed, in this connection, the phrase "notoriously insolvent." But, as a man may be notoriously insolvent, and yet have property out of which some part of the note might be collected the phrase was obviously inappropriate; and that court now substitutes for it the phrase, "the absence of all property, within reach of the law, applicable to the payment of any debt." Hardesty v. Kinworthy, 8 Blackf. 304.

2. Another exception to the rule requiring diligence by a suit at law, is that if, upon diligent search and inquiry the maker of the note cannot be found and his residence cannot be ascertained, the assignee may sue the assignor, without having previously sued the maker. This exception proceeds on the maxim that lex non cogit ad impossibilia. And it is a very reasonable exception. For it would be unjust and even absurd to hold that an indorsee should lose his recourse for omitting to do what cannot be done.

3. If the note is not valid, as, for example, if it is a forgery, or was given without consideration, or on an illegal consideration, or if the consideration has failed, or if it is voidable for fraud, infancy, or coverture, or if it had been paid before assignment—in fine, if there is any valid defense against a recovery on it, the indorsee may sue the indorser without first suing the maker. Howell v. Wilson, 2 Blackf. 418; Fosdick v. Starbuck, 4 Blackf. 417; Bernitz v. Stratford, 22 Ind. 320.

4. If the indorser consents to the omission to proceed promptly in a suit at law against the maker, the prompt legal proceedings required by the general rule will be thereby waived; and the omission will not defeat the indorsee's recourse on the indorser. Nance v. Dunlavy, 7 Blackf. 172; Brown v. Robbins, 1 Ind. 82.

5. If, after the indorsement and before the time when a suit can be brought on the note, the maker removes out of the state, no diligence by a suit is required to fix the indorser's liability. But it is perhaps otherwise, if at the time of the indorsement the maker was known to be a resident of another state. Bernitz v. Stratford, 22 Ind. 320; Brinker v. Perry, 5 Litt. [Ky.] 195;

Taylor v. Snyder, 3 Denio, 145, 151; Spies v. Gilmore, 1 Comst. [1 N. Y.] 321, 326.

I believe there is no decision in a case exactly like the present; but there are several that bear a strong analogy to it. The case of Cheek v. Morton, 2 Ind. 321, very much resembles the one at bar. There it was held that the indorsee of a note, given for the purchase money of land sold to the maker, and which was a lien on the land, was not bound to resort to the lien before suing the indorser. Such a lien is an equitable mortgage. And if, on such a mortgage of lands in the state, the indorsee is not bound to enforce the lien, it should seem strange that he must go out of the state to enforce a lien created by a legal mortgage. I think the general rule only requires that an ordinary proceeding at law shall be attempted by the indorsee. And I am not aware that there is any decision requiring either a resort to equitable proceedings, or to equitable assets in order to fix the liability of an indorser. In the case of Bernitz v. Stratford, supra, it was held that where the maker of the note had left the state before it became due, but had left behind him property subject to execution, the indorsee was not bound to proceed in attachment against that property before suing the indorser. And the reason given is that attachment "cannot be regarded as one of the ordinary proceedings at law. It cannot be resorted to without giving a bond to pay damages, &c., and is thus attended with liabilities which might involve the party in loss which he could not hold the indorser responsible over to him for, in case the attachment should turn out to be wrongful." 22 Ind. 323. It appears to me that the reasons why an indorsee should not be bound to resort to a distant state to foreclose a mortgage on lands are fully as strong as those above stated against a proceeding in attachment. The foreclosure of a mortgage is a proceeding in equity, and not "one of the ordinary proceedings at law." To foreclose a mortgage in Wisconsin would not require such a bond as the Indiana Code requires in attachment: but it would require a bond for costs from the plaintiff who is a citizen of Ohio; and it would probably require him to perform journeys to Wisconsin which might be attended with more trouble and expense than the giving of an attachment bond. Besides, in the case of Bernitz v. Stratford, supra, the property which might have been attached lay in the state of the indorsee's residence; but here the mortgaged property lies in a state remote from him.

As already stated, I deduce, from the decisions on the statute in question, the conclusion that in every case where the maker of a note, at the time when it falls due, is wholly destitute of property of his own subject to execution, the indorsee, in order to have his recourse on the indorser, is not

bound to make any effort whatever to collect the note from the maker. I suppose, therefore, if the note was secured by a mortgage of property situate in the county where all the parties to the note reside, it would be very questionable whether the indorsee would be bound to proceed against the mortgaged property before suing the indorser. If the rule were otherwise, it would seem to follow that the indorsee must pursue and exhaust every security and every remedy, known to the law or available in equity, before the indorser's liability would be fixed. Suppose, for example, that a note has passed through several hands by indorsements; and the last indorsee sues the last indorser alleging that the maker has no property subject to execution; would it be a good defense to such an action, that the prior indorsers, whom by the statute the last indorsee may sue, are sureties to him for the payment of the note; that they are perfectly solvent; and that they ought first to be sued? To carry the doctrine of diligence so far would be unreasonable. Indeed, it may well be doubted whether the supreme court of Indiana has not carried it too far. It would have been no strained construction of the statute to have held that "due diligence" is merely such diligence as is required of the holder of commercial paper, namely a prompt demand of payment, and due notice of the failure to pay. But the decisions are otherwise; and I must follow the decisions. I am not willing, however, to go any farther on this point than the supreme court of Indiana has gone. And, as that court has never gone so far as to require the indorsee to pursue collateral securities and equitable remedies out of the state where the indorsement was made and where he resides, before suing the indorser, I am not willing to take the lead in support of such a doctrine. On the contrary I am satisfied that the indorsee ought not to be held to a degree of diligence so extreme and extraordinary.

The demurrer to the special plea is sustained.

NOTE. In Illinois any bond, bill, or other instrument in writing, is assignable, by indorsement thereon, "under the hand of such person." 3 Gross, St. p. 292, § 4.

A note cannot be assigned on a separate piece of paper, so as to vest the legal title in the assignee. Fortier v. Darst, 31 Ill. 212; Ryan v. May, 14 Ill. 49.

Formerly notes payable to a person or bearer could not be transferred or assigned by delivery only so as to authorize the holder to sue in his own name. It could only be done by writing the payee's name on the back. Hilborn v. Artus, 3 Scam. 344; Roosa v. Crist, 17 Ill. 450. This is altered by the statute of 1874, so that simple delivery is sufficient. 3 Gross, St. p. 293, § 8.

To fix the indorser or assignor in Illinois, the assignee must use due diligence by the prosecution of a suit against the maker, except (1) when institution of such suit would be unavailing; (2) when the maker has absconded—resided without or left the state, when the instrument became due. 3 Gross, St. p. 293, § 7. "Due diligence" is held to require institution of suit at the first term of court after the note becomes due. Lusk v. Cook, Breese, 84; Chalmers v. Moore, 22 Ill. 359. If suit is not instituted when the note falls due, the holder must show that a suit against the maker would have been unavailing at any time while he holds the note. Bledsoe v. Graves, 4 Scam. 382. Diligence requires that execution be issued on the judgment, and not ordered returned within its life, unless holding in the officer's hands would have availed nothing. Chalmers v. Moore, supra. Execution should be issued promptly. Rives v. Kumler, 27 Ill. 291. In fine, due diligence is such as a prudent man would use in the conduct of his own affairs. Nixon v. Weyrich, 20 Ill. 600.

The following cases besides the above bear upon the question: Saunders v. O'Briant, 2 Scam. 369; Schuttler v. Piatt, 12 Ill. 417; Pierce v. Short, 14 Ill. 144; Bestor v. Walker, 4 Gilman, 3; Mason v. Burton, 54 Ill. 349; Roberts v. Haskell, 20 Ill. 59; Curtis v. Gorman, 19 Ill. 141; Allison v. Smith, 20 Ill. 104; Robinson v. Olcott, 27 Ill. 184.

A remote assignor is liable to a remote assignee if due diligence, when required, has been used against the maker. Clifford v. Keating, 3 Scam. 250. Consult, also, Mott v. Wright [Case No. 9,883].