# CASES

### IN THE

# APPELLATE COURTS OF ILLINOIS.

## SECOND DISTRICT—APRIL TERM, 1903.

### William C. Godfrey, Adm'r, v. David Wingert.

1. PLEADING—*Going to Trial Without Issues Joined.*—Proceeding to trial without issues joined waives the irregularity in the pleadings.

2. SAME—*What is Put in Issue by a Plea of the General Issue.*—Where the general issue is pleaded to a special count the plaintiff, in order to recover under it, must prove all the allegations of such count.

3. SAME—*Office of the Common Counts.*—The common counts are used to avoid a variance and to save needless prolixity in pleading, but plaintiff must show a legal cause of action in order to recover under them. He must prove all he would be required to aver in a proper special count.

4. CRIMINAL LAW—*At Common Law One Attainted of Felony Was Liable to Civil Suits.*—At common law one attainted of felony was liable to civil suits.

5. PROMISSORY NOTES—*What Proof the Law Requires to Render an Indorser Liable.*—In order to render an indorser liable, the law requires that the holder of the note could not have collected the note of the makers at any time after its maturity by the use of due diligence to bring suit and enforce judgment and execution.

Opinion on rehearing:

6. WILLS—*Devise of Land Not Owned by Testator Where He Fails to Dispose of Land He Owns.*—Where a testator devises land not owned by him and leaves other land owned by him undisposed of, the land owned by him and not described in the will passes to the heirs at law as intestate estate.

Opinion on an application for a certificate of importance:

7. PRACTICE—*Procedure Necessary to Obtain a Certificate of Importance.*—The application for a certificate of importance must be made and certificate obtained within twenty days after the rendition of the judgment from which the appeal is sought.

8. SAME—*Pendency of a Petition for Rehearing Does Not Obviate*

(563)

*the Necessity of Obtaining the Certificate of Importance Within Twenty Days.*—The pendency of a petition for a rehearing does not obviate the necessity of obtaining a certificate of importance within twenty days after judgment.

**Assumpsit,** upon a contract of indorsement upon a promissory note. Appeal from the Circuit Court of Lee County; the Hon. RICHARD S. FARRAND, Judge presiding. Heard in this court at the April term, 1903. Affirmed. Opinion filed June 8, 1903. Rehearing denied October 6, 1903. Certificate of importance and appeal denied.

WILLIAM BARGE, attorney for appellant.

E. E. WINGERT, attorney for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

This is an action brought in the court below by Wm. C. Godfrey, as administrator of the estate of Wm. H. Godfrey, deceased, against David Wingert, upon a contract of indorsement by the latter upon a promissory note. The note was dated at Dixon, March 13, 1871; was due in nine months thereafter, with interest at ten per cent per annum, if not paid when due; was for the principal sum of $140; was payable to the order of David Wingert at the Lee County National Bank; was signed by Alexander P. Hittle and Robert Laughlin; was indorsed in blank by Wingert; was afterward indorsed by B. B. Higgins; and was indorsed without recourse by Isaiah Brink. This suit was begun January 10, 1901, over twenty-nine years after the maturity of the note. Plaintiff filed a special count upon the note, in which the assignment thereof as aforesaid to Wm. H. Godfrey was averred. It was therein alleged that when said note fell due, the makers, Hittle and Laughlin, were each of them insolvent and unable to pay the note or any part thereof, and hitherto from thence have continued insolvent and have not paid the note or any part thereof, and that the institution of a suit against said makers or either of them at the time said note fell due, or at any time since, would have been wholly unavailing. To this were added the common counts. Defendant pleaded non-assumpsit, and the sixteen-year statute of limitations, and also the ten-

year statute of limitations, which last plea he afterward withdrew. Plaintiff replied to the second plea that the cause of action did accrue to plaintiff within sixteen years before the commencement of the suit; and further, that at the time said cause of action accrued defendant was out of the State of Illinois, to wit, in the State of Iowa, and there resided till he afterward, to wit, on January 10, 1901, returned to this state; and that plaintiff within sixteen years of the residence of defendant in this state, after said causes of action alleged in said counts accrued, commenced his action against defendant. To the first special replication defendant added a *similiter*, and to the second he rejoined that plaintiff did not begin his suit within sixteen years after defendant's first return to this state after the accruing of said several causes of action. This rejoinder concluded to the country, and by going to trial it was treated as if issue thereon was joined. (Funk v. Babbitt, 156 Ill. 408.) A jury found the issues for defendant. Plaintiff entered motions for a new trial and in arrest of judgment, which were denied. Defendant had judgment against plaintiff for costs, and plaintiff appeals.

Defendant had removed from this state before the maturity of the note, and has never since resided in this state. There was proof having some tendency to show the insolvency of the makers at the maturity of the note. Plaintiff argues that if the makers were insolvent at that date a cause of action against Wingert at once arose in favor of the assignee of the note, Wm. H. Godfrey, and that cause of action is still alive because of defendant's absence from the state, and that plaintiff was not required to prove the continued insolvency of the makers thereafter. The plea of the general issue put plaintiff upon proof of the averments of his special count. Having averred that at the time of the maturity of the note each of the makers was insolvent and unable to pay the note or any part of it, and continued insolvent from thence hitherto, and that the institution of a suit against them or either of them at the time said note fell due, or at any time since, would have

been wholly unavailing, plaintiff was required to prove
those allegations in order to recover upon the issues raised
by the special count and the general issue thereto. In
Bledsoe v. Graves, 4 Scam. 382, the court said the plaintiff
"has averred in his declaration the continued insolvency
of the maker till the commencement of this suit; and this
is one of the issues between the parties, as tendered by the
plaintiff himself, to which the instructions should have con-
formed." Nor can we assent to the proposition that if the
makers were insolvent at the maturity of the note, then
because the assignor was a non-resident of the state at and
ever since the maturity of the note, the assignee was not
bound to follow the makers further or to collect from
them if they afterward became solvent, but could neglect
the makers forever thereafter, and collect from the assignor
twenty-nine years later. The absence of the assignor from
the state excuses suit against him, but it does not excuse a
failure to use due diligence to collect from the makers. If
the declaration had stated the absence of the assignor from
the state at and ever since the maturity of the note, and as
to the makers had only averred that they were insolvent
at the maturity of the note, it would not have stated a
cause of action against defendant.

Hittle died in 1884 or 1886, and as to him the question
is whether he was insolvent from December, 1871, to his
death, and whether at his death he left any estate from
which the note could have been collected. Hittle lived on
the 200-acre farm of Wm. H. Godfrey from 1869 to the
fall of 1873. He seems to have been there as a tenant.
When Wm. H. Godfrey bought this note which was averred
to have been before its maturity, he was buying the note
of his tenant. Plaintiff's proof that Hittle was insolvent
consisted mostly of witnesses who testified such was Hittle's
reputation, and that they never knew of his having any
property. The cross-examination of these witnesses left
this proof of but little value. Some of them spoke from
hearsay, and some had not even heard he was insolvent, and
most of them did not live near him, and none had any

knowledge what property he had or what debts he owed. Most of them did not state to what period of time their testimony was intended to apply, and did not show even such hearsay covering all the time from the maturity of the note till he died. Defendant introduced a chattel mortgage given by Hittle to George L. Schuler, dated October 30, 1871, and securing a note for $384.88 due November 1, 1872, with interest at ten per cent per annum. This mortgage was given a month and a half before the maturity of the note here sued upon, and it conveyed in mortgage a large amount of personal property, including four horses, four cows, seven young cattle, twenty-five hogs, six plows, three sets of harness, harrows, sleigh, 1,500 bushels of corn, 100 bushels of oats, ten tons of hay, 3,000 feet of lumber in crib, a double wagon, a reaper and a corn planter. This proof tended to show that shortly before this note became due Hittle had a large amount of personal property situate on the farm of W. H. Godfrey, and therefore under his immediate observation. It is obvious also Hittle must have had considerable personal property to be able to work a farm of 200 acres for four or five years. This mortgage came due November 1, 1872, and so far as appears was not renewed, and therefore, if this property was still owned by Hittle it was subject to his debts, if it exceeded in value the amount of his legal exemptions. It is to be observed also that this mortgage did not cover his household furniture or wearing apparel. The value of this property was not proved. Plaintiff insists that as defendant offered this mortgage in evidence he is bound by the presumption that it was worth no more than sufficient to secure the note described in it, because if it was worth more it was a fraud on Hittle's other creditors, and fraud is not presumed. We think this argument not sound. Plaintiff had the burden of proving Hittle insolvent. This proof that he had this property overcame plaintiff's hearsay proof that he had none, and left the plaintiff to show what it was worth and that it was exempt from execution. On March 3, 1873, a year and a quarter after the note in suit matured, Hittle

gave Wm. H. Godfrey, then the owner of this note, a mort-
gage upon three horses, five cows, seven young cattle, two
sets of double harness, a wagon, a buggy, a reaper, two
harrows, a corn planter, a check rower, four plows, ten tons
of hay, 100 bushels of corn, a hay rack, a rolling coulter
and a grindstone.    This was given to secure a note of that
date for $900, due March 3, 1895, with interest at ten per
cent per annum.    It is evident that before taking this mort-
gage plaintiff's intestate could have collected the note here
in suit if he had sought to enforce it.    It will be noticed
that this mortgage does not cover household furniture or
wearing apparel, nor anything that would be found in an
ordinary house.    Defendant thus again rebutted the claim
that Hittle had no property by showing him in possession
of a large amount of personal property suitable to the
farming operations he was carrying on upon a 200-acre
farm, and that plaintiff's intestate, the owner of the note,
knew that fact.    Plaintiff did not show the value of
this property or that it was exempt from execution.
Again, Hittle's father died in Lee county in February,
1877, testate, but leaving forty acres of land in Lee county
which did not pass by his will, and was not conveyed
by any residuary clause therein.    Hittle was one of five
heirs, and he became seized in fee of an undivided one-
fifth of said tract.    The proof shows his interest in that
land was worth more than the principal and interest then
due upon this note.    He retained that title nearly six years,
during all which time plaintiff could have collected this
note from Hittle's interest in that land by the ordinary
process of law.    Long after this note was due, Hittle
received $300 from his mother, or his mother's estate, and
$600 from his brothers and sisters.    These sums increased
his property to just that extent.    In 1882 Isaiah Brink
sued Hittle in the Circuit Court of Lee County, and
obtained a judgment for $245, and it was paid.    True, it
was paid out of his father's estate, by some of the heirs,
but as the judgment was recovered before Hittle conveyed
his interest in the forty-acre tract, it is evident it was paid

Godfrey v. Wingert.

because it was a lien on Hittle's one-fifth interest in that tract; and Wm. H. Godfrey would have been equally successful if he had been diligent. We regard the proof we have thus outlined as fatal to a recovery by plaintiff. He never made any efforts to recover of the makers of the note, while if he had sued them he could easily have collected the note from Hittle. That being the case we deem it unnecessary to go into details as to the financial condition of the other maker, Laughlin. The proof is clear that if W. H. Godfrey had got a judgment against Laughlin within two and a half years after this note matured he could have collected it. In May, 1874, a deed conveying an eighty-acre tract in that county to Laughlin for an expressed consideration of $750 was placed on record; fifteen minutes later a mortgage from Laughlin and wife to John Reilley was recorded, securing a debt of $976.25; and forty-five minutes later a deed was filed for record from Laughlin and his wife to their son Joseph for an expressed consideration of $1,500, and Robert Laughlin still remained in possession; and two years later the son conveyed the farm to H. W. Remmers for $3,400. If Godfrey had had a judgment against Laughlin before May, 1874, he would have obtained a lien upon this land. It is true he could not have brought suit and got a lien after the deed was made to Laughlin and before the title passed from him but the property in the hands of the other maker on Godfrey's farm was sufficient to call upon Godfrey in the exercise of due diligence to sue the makers, and if he had, and if he had got a judgment against them before May, 1874, he would have been able to collect of Laughlin.

Complaint is made of certain rulings upon the evidence. In most cases plaintiff finally succeeded in getting in his proof, notwithstanding these adverse rulings. Plaintiff offered the record of the indictment and conviction of Hittle of the crime of an assault with intent to kill in 1876, and of his sentence to the Illinois State Penitentiary for one year. Defendant objected, and the court asked the purpose of the proof, and plaintiff's counsel stated two rea-

sons, first, because by this conviction he became civilly
dead and could not be sued, and second, that it strongly
tended to prove insolvency.    At the common law one
attainted of felony was liable to civil suits.    Platner v.
Sherwood, 6 Johns. Ch. 118; 1 Daniell's Ch. Pleading &
Practice, Chap. 4, Sec. 10; 17 Am. & Eng. Ency. of Law,
487; Dicey on Parties, Chap. 1.    To hold a convict exempt
from suit for his debts and torts would be conferring a
privilege instead of inflicting a punishment.    But if Hittle
could not be sued while a convict, the delay so produced
would only have been for one year, and would not excuse
the delay for the rest of the time intervening between the
maturity of the note and Hittle's death.    Nor was this
accompanied by any offer to prove the sentence was exe-
cuted.    How this sentence proved insolvency is not
explained.

The proof shows that defendant came back to this state
and to Lee county about once in every two years; that at
such times he often stayed and visited in Lee county a week
or more at a time; that he frequently visited in Dixon,
where Godfrey, the holder of the note, lived; that he had
attended several funerals in his family and a wedding in
Lee county, and visited extensively there; and that God-
frey was well acquainted with defendant's brother and
often talked with him, and never inquired where defendant
was.    The proof raises a strong presumption that this debt
was in some way paid or settled in the lifetime of W. H.
Godfrey, the holder of the note.    It is quite unlikely the
latter would take a chattel mortgage from Hittle and not
include this debt, if it still existed.    The fact that the
indorsement by Brink to Godfrey was without recourse,
is significant.    The failure of Godfrey to take any legal
proceedings against Hittle when he was on Godfrey's farm
and owned live stock, farming implements and crops, is an
indication that the debt was in some way extinguished dur-
ing that time.    Godfrey died in August, 1900, nearly twenty-
nine years after the maturity of the note.

Complaint is made of the action of the court upon vari-

ous instructions.   In the main they stated the law applicable to the issues tendered by the special count.   If there were any inaccuracies in the instructions, yet it is so clear that there is no case against this indorser that no harm was or could have been done plaintiff thereby.   As the judgment is right we deem it unnecessary to review in detail the numerous objections made to the instructions.

Plaintiff argues that if he was bound to prove the averments of his special count in order to recover thereunder, yet he could recover under the common counts without such proof.   The common counts are used to avoid a variance and to save needless prolixity in pleading, but plaintiff must show a legal cause of action in order to recover under them.   He must prove all he would be required to aver in a proper special count.   He could not recover against this indorser under the common counts by merely introducing the note, but would be bound to introduce proof of all facts which the law requires shall exist to render an indorser liable, namely, that by due diligence to bring suit and enforce judgment and execution he could not have collected the note of the maker at any time after its maturity. (Crouch v. Hall, 15 Ill. 263; Nixon v. Weyhrich, 20 Ill. 600; Clayes v. White, 83 Ill. 540.)   This proof he did not make.

Defendant established the truth of his rejoinder to plaintiff's second replication to the second plea, but in view of what has already been said we deem it unnecessary to consider whether that rejoinder presented an immaterial issue.   A juror made an indiscreet remark in an office before the close of the trial, but we find therein nothing calling for a reversal.   The judgment is affirmed.

In disposing of a petition by appellant for a rehearing, the following additional opinion was filed.

Per Curiam.

The petition for a rehearing calls further attention to the will of Hittle's father.   While forty acres of testator's land was not disposed of by said will, it did attempt to dispose of forty acres he did not own.   Appellant argues that the provisions relative to the forty acres testator did not own

are to be applied to the forty acres not mentioned in the will, and therefore the latter tract did not pass to the heirs at law as intestate estate. The contrary was held in Kurtz v. Hibner, 55 Ill. 514, where there was a devise of land not owned by the testator, and it was held that land owned by the testator, and not described in the will, passed to the heirs at law as intestate estate, although it was alleged there, as here, that there was a mere misdescription of the land intended. The case of Decker v. Decker, 121 Ill. 341, we regard as not in point. There the will devised to a son "a part of my real estate, to wit:" and then described twenty acres of real estate testator did not own. When the untrue part of the description was rejected, the words, "a part of my real estate, to wit," and "twenty acres" remained, and part of the rest of the description was true; and it was held enough of the description remained after the untrue part had been rejected, so that the lands devised could be identified. Again, if any one interested under the Hittle will could have successfully applied to a court of equity for such relief as was granted in the Decker case, *supra*, no such relief was sought. It is manifest the legal title was in the heirs at law. Hittle, a maker of the note here in suit, owned the legal title to one-fifth of this forty acres for about six years, after the maturity of this note, and then conveyed it. During all that time the value of his one-fifth interest exceeded the amount of this note. It is not a reply for the holder of the note to say if he had sought to make the note out of that land, there is a possibility some one might have sought and obtained equitable relief therefrom. He was bound to pursue his plain legal remedy.

Our foregoing opinion was based upon a very careful examination of the entire testimony in the record itself. We merely differ with appellant's counsel as to what it proves. To discuss in any opinion every suggestion made by ingenious counsel would extend it to an unwarrantable length. In our judgment the proof did not make a case for plaintiff under the law; and no slight imperfections or omissions in instructions, if they exist as claimed, would

Godfrey v. Wingert.

justify a reversal of the judgment. The petition for a rehearing is denied.

OPINION PER CURIAM, upon application for a certificate of importance.

Appellant has applied for a certificate of importance and for an appeal to the Supreme Court. A judgment was entered in this cause on June 8, 1903, affirming the judgment of the trial court. On July 8th appellant filed a petition for a rehearing. On October 6th that petition was denied. On October 22d appellant made this application for a certificate of importance and an appeal. In MacLachlan v. McLaughlin, 126 Ill. 427, upon a full consideration of the statute governing the subject, it was held that the application for a certificate of importance must be made within twenty days after the rendition of the judgment from which the appeal is sought. This conclusion was adhered to and applied in Wilson v. Scoville, 127 Ill. 393; I. & I. S. R. R. Co. v. Sampson, 132 Ill. 527; Lindauer v. Pease, 192 Ill. 456; and Klees v. C. & E. I. R. R. Co., 82 Ill. App. 624. In the Lindauer case, *supra*, it was held that the certificate and appeal must not only be applied for but obtained during the twenty days, and that the Appellate Court had no power to grant either the certificate or the appeal after the expiration of twenty days from the rendition of judgment.

But it is argued here by appellant that where a petition for a rehearing is filed the judgment is not final, till the rehearing is denied; that a certificate of importance and appeal can be granted at any time within twenty days after the rehearing is denied; and that any other view would deprive a party desiring to appeal of his opportunity to seek a rehearing in this court. In Sholty v. McIntyre, 136 Ill. 33, this contention, so far as relates to an appeal, was considered and denied. It was here held, the necessity of obtaining an order granting an appeal within twenty days after the entry of a judgment by the Appellate Court was not obviated by the pendency of a petition for rehearing; that such petition for a rehearing did not suspend the judgment or make it merely interlocutory; and that an

appeal obtained within twenty days after the rehearing was denied, but seventy-three days after judgment, was improperly allowed and must be dismissed. As the cases first above cited show that an appeal and a certificate of importance are governed by the same statute and must be obtained within the same time, it is clear that the pendency of a petition for a rehearing does not obviate the necessity of obtaining a certificate of importance within twenty days after judgment. Under the Sholty case, *supra*, we can not now grant appellant an appeal; how, then, can we grant him a certificate of importance? The Sholty case was so applied in Kirkwood v. Steele, 168 Ill. 177, where it was held that the fact that a petition for a rehearing had been filed did not change the rule requiring that a certificate of importance shall be obtained within twenty days after judgment. Though that opinion does not expressly state that a petition for rehearing had been filed in that case, it is so implied. At any rate we consider that appellant's contention is fully answered by the decision in the Sholty case.

As the present application is made more than four months after judgment, we have now no jurisdiction to determine whether the case involves questions of law of such importance, either on account of principal or collateral interests, that it should be passed upon by the Supreme Court. The application for a certificate of importance and an appeal is therefore denied.