PORTEUS B. ROBERTS, Appellant, v. WILLIAM H. HASKELL, Appellee.

ERROR FROM PEORIA.

A third indorsee may maintain a suit against a second indorsee upon a note which has passed through his hands without his indorsement, and is subsequently assigned to him.

Where a party suing an indorsee has to show the insolvency of the maker of the note, and attempts to prove the existence of a mortgage against him, he must have made reasonable efforts to procure the original; the introduction of a copy, without showing this, is improper.

The possession of personal property is *prima facie* evidence of ownership, and his assertion that such property belongs to another will not rebut the legal presumption that it is his.

That property is incumbered, does not furnish a sufficient reason for not making a levy upon it, unless the party omitting to do so is prepared to show, in a case like this, that the claims were valid, and that a levy would have been wholly unavailing.

If the maker of a note, where one indorsee is sued by another, had property exempt from execution, at the time or soon after the note became due, sufficient to have paid it, the presumption is, that the note could have been collected of such maker.

THIS is an action by the appellee as indorsee, against the appellant as indorser, of a promissory note. The note and indorsement upon the same are as follows :

$200. PEORIA, Ill., May 10, 1855.
            One year after date, I promise to pay Isaac Underhill, or order, two hundred dollars, for value received, with interest at six per cent. per annum, payable annually from the date hereof.

                                                                M. ZANONI.

Indorsed on the back :

            Pay to Porteus B. Roberts, without recourse to me.
                                                I. UNDERHILL.
            Pay to William Brady, or order.
                                                P. B. ROBERTS.
            Pay to William H. Haskell.
                                                WILLIAM BRADY.

    The declaration was filed in the County Court of Peoria county, on the 22d day of December, A. D. 1857. It is in the assumpsit, and contains three counts, as follows :

    The first count is upon the note and indorsement, and avers that suit was duly instituted and prosecuted to judgment against the maker of the note ; that an execution was duly issued upon said judgment, and returned unsatisfied.

    No evidence was offered under this count.

    The second is also upon the note and indorsement, and contains the following averments :

That Zanoni made the note, and delivered the same to Underhill, the payee.

That Underhill indorsed the same without recourse, and delivered the same to the appellant.

That the appellant indorsed and delivered the same to one William Brady.

That said Brady indorsed and delivered the same to the appellee, who was plaintiff below.

That at the time said note became due and payable, Zanoni, the maker thereof, was wholly insolvent, and that the institution and prosecution of suit against him, upon said note, would have proved wholly unavailing.

The third count contains the common count for "*money paid,*" for "*money had and received,*" and for money due on an "*account stated.*"

The defendant pleaded to the whole declaration the general issue, with an agreement between the parties that all matters which could be properly given in evidence under special pleas, properly pleaded, should be admissible under the plea of *non assumpsit.*

On the trial, the plaintiff below produced in evidence the note and indorsement, which was objected to by defendant below, and objection overruled.

The plaintiff below then produced eleven witnesses, each of whom testified that they had known M. Zanoni, the maker of the note, since the spring of 1856; that on the 10th day of May, 1856, and from that time to the commencement of this suit, they had deemed Zanoni insolvent and unable to pay his debts.

The plaintiff then produced in evidence the records of two of the justices of the peace of Peoria county, and read from said records the entry of eleven judgments against Zanoni, in favor of various persons, and entered during the spring, summer and fall of 1856, together with the executions issued thereon, and returns made upon the same of "no property found."

This evidence was all objected to.

The defendant below proved that during the summer of 1856, Zanoni built a house in Peoria, on lot one, block four, which house was worth $2,000.[1]

The plaintiff below then offered in evidence a certified copy from the records of Peoria county, of a mortgage made by Zanoni to one Mary Rosa Zanoni; and for the purpose of laying the proper foundation for the admission of such copy, the plaintiff below testified as follows: "The original mortgage, of which this is a copy, is not in my possession or power to produce on this trial, and was never in my possession. I never saw it—

never inquired for it—know nothing about it; it is all Greek to me."

The defendant below then objected to the introduction of said copy in evidence, but the court overruled the objection.

The defendant below then produced *Isaac Underhill*, who testified that he was payee of the note offered in evidence; that he knew the parties to this suit. The defendant below then offered to prove, by said witness, the following facts: That witness sold the note to the plaintiff below, indorsing it in blank, and without recourse on witness; that plaintiff below sold said note to defendant below, who in turn indorsed it to Brady, and Brady afterwards, and after said note became due, sold and indorsed said note to the plaintiff below; that said last indorsement was made on the 13th day of May, 1856.

This evidence was objected to by the plaintiff below, and the objection sustained.

At the request of the plaintiff below, the court gave the following instructions to the jury, to the giving of which the defendant below objected and excepted.

" If the jury believe, from the evidence, that at the time when the note given by Zanoni to Underhill fell due, Michael Zanoni was notoriously insolvent, and has so continued up to the time of the commencement of this suit, so that the prosecution of a suit against him would have been unavailing to obtain the amount due on the note, or any part thereof, then they will find for the plaintiff."

" Although the present plaintiff might have had the note given in evidence in this suit in his possession, as assignee of Underhill, yet if he passed it, without indorsement, to the present defendant, and he indorsed it to Brady, and Brady to plaintiff, this would not prevent plaintiff from recovering in this suit."

" The possession of property by Zanoni, claiming to hold it as the property of his mother, or any other person, is not evidence of ownership in Zanoni."

" The plaintiff was not bound to levy his execution upon the property covered by liens, mortgages, or incumbrances, by which he would have to pay off liens, or incumbrances, or involve himself in the expense of a trial of the right of property, by an adverse claimant."

" The return by the constable of an execution unsatisfied, or property not found, is proper evidence to be considered by the jury that Zanoni had no personal property subject to such execution at the time of such return; and execution returned unsatisfied, or no property found, by the sheriff of the county, is proper evidence to be considered by the jury that said Zanoni had no personal or real property at the time of such return.

But the fact that suit against Zanoni would have been unavailing, may be proven by any other legal testimony as well as by the return of executions against him unsatisfied. It is only necessary for the jury to believe, from the testimony adduced before them, that such suit would have been unavailing to entitle the plaintiff to recover."

The defendant below then asked the court to give the following instructions, all of which the court refused to give, and the defendant excepted:

" Should the jury even believe, from the evidence, that at the time the note fell due, Zanoni was insolvent, still, if the jury should believe that had the plaintiff used due diligence in the collection of the note, he could have collected the same, then the jury will find for the defendant."

"If the jury believed, from the evidence, that the plaintiff purchased the note offered in evidence, after the same became due, the jury will find for the defendant."

" If the jury believe, from the evidence, that during the summer of 1856, Zanoni had personal property not exempt from execution, sufficient to have paid the debt, such state of facts raises a *prima facie* case that the note could have been collected of him."

" If the jury believe, from the evidence, that Zanoni was in the possession of, and had under his control, personal property, during the summer of 1856, such possession is presumptive evidence that Zanoni owned said property; and unless the plaintiff has proved that some one else owned the property, the presumption would be, that it really belonged to Zanoni."

" Although the jury should believe, from the evidence, that executions in other cases against Zanoni were returned 'no property found,' such returns would not, so far as this case is concerned, prove that Zanoni was at the time insolvent, or that proceeding by due diligence in this case would have been unavailing."

The jury found for the plaintiff below, and assessed his damages at $232.80.

The defendant below moved the court for a new trial, which motion was overruled.

The defendant below then moved the court in arrest of judgment, which motion was overruled.

Errors assigned are:

The court erred in admitting the note and indorsement in evidence, without proof of the execution of the same.

The court erred in admitting evidence of the reputation or reputed insolvency of Zanoni.

The court erred in admitting as evidence, the records of judgments and executions against Zanoni in other cases, and the returns of "no property found," upon such executions.

The court erred in admitting the certified copy of the mortgage from M. Zanoni to Mary Rosa Zanoni, no proper foundation having been laid for the same.

The court erred in giving the instructions asked by the plaintiff below.

The court erred in refusing the instructions asked by the defendant below.

The court erred in overruling defendant's motion for a new trial, and in arrest of judgment.

PURPLE & PRATT, for Appellant.

MANNING & MERRIMAN, for Appellee.

CATON, C. J. This was an action by a third indorsee against the second indorsee. It was offered to be proved for the defense that while the note was under the blank indorsement of the first indorser, it had passed through the hands of the plaintiff, who subsequently received it, and now holds and sues upon it as the third indorsee. This evidence we think was properly ruled out by the court. By receiving and passing the note while under a blank indorsement, and without putting his name to it, he assumed no responsibility in relation to it. The moment he parted with it he became as much a stranger to it as if he had never held it. Had the party to whom he passed it wished him to assume any responsibility in relation to it, he should have required his indorsement upon it. By taking it without such indorsement he waived any such guarantee, and agreed to take it upon the sole responsibility of the names already upon the note. After that, Haskell was as much at liberty again to receive it in the course of business as a subsequent indorsee, as if he had never held it.

But we think the court erred in admitting in evidence the copy of the mortgage from the maker of the note to Mary R. Zanoni. The plaintiff in his testimony, which was given as the foundation for offering the copy in evidence, said, " The original mortgage, of which this is a copy, is not in my possession or power to produce on this trial, and was never in my possession. I never saw it—never inquired for it—know nothing about it— it is all Greek to me." According to the decision of *Booth* v. *Cook*, decided at this term, this evidence was insufficient. It is true, that here the mortgage was presented as rebutting evidence, while there the deed was primary and a necessary link in the

plaintiff's title; still, that could not dispense with all effort to produce the original. The plaintiff must, or should have known that if the maker of the note held the property described in the mortgage, unincumbered, it would, or at least might, defeat his action, and the necessity of producing this mortgage must have been apparent to him, and he should have made reasonable efforts to procure the original. The copy of the mortgage should have been excluded.

The third and fourth instructions given for the plaintiff were as follows :

" The possession of property by Zanoni, claiming to hold it as the property of his mother, or any other person, is not evidence of ownership in Zanoni."

" The plaintiff was not bound to levy his execution upon the property covered by liens, mortgages or incumbrances, by which he would have to pay off liens, or incumbrances, or involve himself in the expense of a trial of the right of property by an adverse claimant."

Both these instructions were wrong. The possession of property by the maker of the note was *prima facie* evidence of ownership in him, and the bare assertion by him, that the property belonged to his mother, is not sufficient to rebut this presumption. Suppose Haskell had recovered a judgment, and levied upon this property, the bare declarations of Zanoni that the property belonged to his mother, would not have been sufficient to sustain her claim to it, without corroborating circumstances, nor was it sufficient in this case, to excuse Haskell from making further inquiry.

The second instruction quoted was even more objectionable than the first. If that instruction was the law, then the maker of the note might have had property enough to pay an hundred such notes, and if it were incumbered by no matter how small an amount, the holder was excused from seeking to recover satisfaction out of it. Such is not the law. He was bound to use due diligence to collect it of the maker, or else take the responsibility of showing that, by the use of due diligence, he could not have collected it. If the maker had property worth more than any incumbrance upon it, it was the duty of the indorsee to levy upon, and, at least, offer it for sale ; and whenever others set up claims to property held by Zanoni, the holder of the note was bound to contest those claims with the claimant, or take the responsibility of showing that they were valid. He was not at liberty to assume that every fictitious claim was valid.

The following instruction, asked for the defendant, was refused : " If the jury believe, from the evidence, that Zanoni was in the possession of, and had under his control, personal

property during the summer of 1856, such possession is presumptive evidence that Zanoni owned said property, and unless the plaintiff has proved that some one else owned the property, the presumption would be that it really belonged to Zanoni." For the reasons already given, we are of opinion that this should have been allowed.

The defendant also asked this instruction, which was refused: "If the jury believe, from the evidence, that during the summer of 1856, Zanoni had personal property, not exempt from execution, sufficient to have paid the debt, such state of facts raises a *prima facie* case that the note could have been collected of him." We have no doubt this should have been given. If the facts were as supposed by the instruction, the presumption is, that, by the exercise of due diligence, the property might have been found and made available for the payment of the debt.

It was the right of the party to have the case submitted to the jury, under proper instructions, and because this was not done, as well as for the reason that improper evidence was admitted, the judgment must be reversed and the cause remanded.

*Judgment reversed.*