## NIANTIC BANK *et al.*

*v.*

## ROBERT B. DENNIS.

1. **REDEMPTION**—*by one creditor from another in equity.* The M. & M. Bank recovered a judgment in the name of King, its attorney, in November, 1853, against Davidson, who held a tract of land under a perpetual lease with the right to purchase the fee at a fixed price. In January, 1854, Dennis recovered judgment against Davidson. In February, 1854, the bank, having an unrecorded assignment from Davidson, older than either judgment, of his lease, paid the purchase price and received a deed from the owner of the fee, and then recorded the assignment and deed. In May, 1857, the land was sold under the King judgment. In August, 1858, Dennis recovered another judgment against Davidson, and redeemed from the sale under the King judgment and obtained a Sheriff's deed. Dennis had sold in May, 1856, under his first judgment but had not taken out a deed. He now filed a bill to redeem the legal title from the M. & M. Bank and its assignees. *Held,* that he could redeem by paying what the bank had paid for the legal title, and interest and taxes.

2. **JUDGMENT LIEN.** The lien of a judgment upon an equitable estate in land belonging to the judgment debtor is not affected by the fact that the instrument under which the equity arises is not recorded.

3. **ESTOPPEL**—*by acts in pais.* If a judgment creditor causes land belonging to the judgment debtor at the date of the judgment to be levied on and sold under an execution issued upon the judgment, he cannot, as against a purchaser at the Sheriff's sale or redeeming creditor, insist that the judgment was paid at the date of the sale, and its lien destroyed.

4. **EXECUTION**—*presumption in regard to its issue.* The presumption is, in the absence of proof, that a clerk issues an execution only under the direction of some person authorized to control the writ.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a bill in chancery filed by Robert B. Dennis against the Niantic Bank *et al.* to redeem certain real estate. The facts are fully set forth in the opinion of the court.

Messrs. KING & SCOTT for appellants.

Mr. W. T. BURGESS for appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

On the 19th of October, 1846, one Daniel Davidson leased from one Richard R. Swift, the undivided third of a certain tract of land situate in Cook county, forever, at an annual rental of one hundred dollars. There was a provision in the lease that whenever Davidson should pay Swift seven hundred dollars the latter would deed him the premises.

On the 9th of March, 1853, Davidson assigned the lease to one Bronson, cashier of the Merchants & Mechanics' Bank, to hold as security for any indebtedness Davidson might contract at the bank. The assignment was not, at that time, recorded. On the 28th of November, 1853, Davidson then being indebted to the bank over $4,000, it took judgment against him on one of his notes, in the name of King, attorney of the bank, the judgment being for $1,047.76, and rendered in the Circuit Court of Cook county. Execution was duly issued.

On the 23d of January, 1854, Dennis, the complainant in this case, recovered a judgment in the Cook County Common Pleas against Davidson, for $6,025. An execution was duly issued, and the premises in controversy were afterwards, on the 12th of May, 1856, sold under this judgment. There was no deed made and delivered under this sale, and the judgment is therefore important, for the purposes of this suit, only so far as its existence explains subsequent transactions.

On the 6th of February, 1854, Bronson, in behalf of the bank, paid Swift the $700 stipulated in said lease as the purchase money, and received from him a conveyance of the premises. This was done with the consent of Davidson, and the land was taken by the bank in satisfaction of the debt due to it from Davidson. The original lease and the assignment thereof as security to Bronson, were now recorded in the Recorder's office for the first time, together with the deed to Bronson, the record bearing date February 6th, 1854.

On the 5th of May, 1857, an execution was issued on the King or bank judgment, and levied on the premises in controversy. The premises were struck off to King, the attorney of the bank. The judgment had been once assigned by King to Fitch & Hewes, but on the 7th of April, 1857, they had re-assigned it to Wentworth, the president of the bank. It must therefore be considered as belonging to the bank at the time the execution was issued.

On the 27th of August, 1858, Dennis, the complainant, recovered another judgment against Davidson for $9,295, and on the same day, sued out an execution and redeemed from the sale to King, under the King or bank judgment, paying $652.80 redemption, and on the 13th of September, 1858, the premises were again exposed by the Sheriff, at public sale, and there being no higher bid than the redemption paid by Dennis, they were struck off and deeded to him by the Sheriff. He then filed his bill to redeem, and procure a conveyance of the legal title which had passed from Swift to Bronson, as cashier of the Merchants & Mechanics' Bank, making all persons interested parties, and by an amendment bringing in the Niantic Bank, to which the Merchants & Mechanics' Bank had sold and caused the premises to be conveyed on the 20th of July, 1858. The court allowed the complainant to redeem by paying the $700 and interest, which the bank had paid Swift for the legal title, and all taxes paid by the bank and interest, the whole amounting to $1,549.35. The defendants below bring the record to this court, and the complainant below assigns cross-errors. There were some other sales of the premises made by the Merchants & Mechanics' Bank, before the final sale to the Niantic Bank, but we have stated all the facts material to the disposition or proper understanding of the case.

From what has been said it appears that the eldest lien on the premises was the bank judgment in the name of King, its attorney, against Davidson, in November, 1853. The second lien was the judgment in favor of the complainant,

Dennis, of January 23d, 1854. The assignment of the lease from Davidson to Bronson, as security for the bank, was, in fact, prior in time to both of these judgments, but not being recorded until February 6th, 1854, it became junior to both as to third persons without actual notice, and it is not pretended that Dennis had such notice. The lien of these two judgments upon the equitable estate of Davidson was in no wise affected by the fact that the lease, under which that estate arose, was not recorded. Neither, under our statute, was it affected by the fact that his estate was equitable instead of legal. His right and interest in the land, whatever they were, were bound by the judgment. When, therefore, the Merchants & Mechanics' Bank paid up the $700 and procured a deed for the legal title from Swift, if, as is urged by their counsel, and as we presume was the fact, that conveyance was taken by the bank in full satisfaction of its claims against Davidson, including its judgment, it then left the Dennis judgment of January, 1854, the eldest lien upon the land, and held its own title subject to that judgment. In 1857, the bank having negotiated a sale of the premises, and been unable to complete it on account of the condition of the title, sued out an execution upon its judgment, with the view, we presume, of perfecting its title by procuring a Sheriff's deed under that judgment as the eldest lien. Had there been no redemption from the sale, this object would have been accomplished, but Dennis redeemed, and procured a deed, thus occupying the same position that he would have held had he been the purchaser instead of the bank, at the Sheriff's sale upon the bank execution. Dennis, therefore, has title under a judgment which was the eldest lien upon Davidson's equitable estate. It is impossible to give a valid reason why he should not be permitted to refund to the bank what it has paid Swift, and thus convert this equitable estate into a legal one, such payment having been made by the bank by virtue of the rights it derived from Davidson. So far as the rights of Dennis are concerned, they are the same that they would be, had the legal title remained in Swift.

It is urged by the counsel for the appellants, (the King or bank judgment having been in fact paid by the arrangement between Davidson and the bank, when the lease was assigned to the latter,) that nothing passed by the sale under that judgment, either to King as the purchaser, or to Dennis as redeeming creditor. Even if this were true, and this judgment were to be regarded as a nullity, Dennis would still be at liberty to take out his deed under the sale on his first judgment, and thus cut off the bank. But whether true or not, it is a question which neither the Merchants & Mechanics' bank, nor any person claiming under it, can be permitted to raise. By the most solemn acts which it could perform in connection with that judgment, it proclaimed to the world that it was not paid. It sued out an execution, it levied the execution upon these premises, it caused them to be offered to the public for sale, it had its attorney to bid them in for $580.26, and all these facts appearing upon the official records, after a third person, relying upon the facts thus disclosed, has come forward and redeemed from this sale, the bank comes in and says, the sale was all a sham, and this judgment upon which we offered this land for sale, had already in fact, been paid. Can any argument be needed to show that the bank cannot be permitted to hold this language? If the owner of land is estopped from asserting his title because he has been silent when good faith required him to speak, shall he not be estopped who has been, not merely passive, but active, in deceiving others? We do not suppose the bank was seeking to deceive. It was a race between creditors. But in seeking to protect its own interests, it did so act as to deceive third persons. It treated this judgment as having a valid existence, and it cannot now be permitted to say it had not. It was not the interest of Dennis to be obliged to redeem. If this judgment was paid, as the bank now claim, Dennis might have fallen back upon his first judgment, as the eldest lien.

Neither is it true, as urged, that if the judgment was paid, King took nothing by the sale, and Dennis in redeeming,

was only subrogated to whatever rights King had. Dennis, by redeeming, took whatever rights the official records disclosed in King, unaffected by any secret equities that might have affected King. He occupied the same position he would have held, had he been an innocent purchaser at the sale. If the judgment had been in the name of the bank, perhaps a different case would have been presented. The question would then have arisen whether the acquisition of the legal title by the bank from Swift did not destroy the lien of its own judgment, by considering the legal title as relating back to the assignment of the contract by Davidson, and thus overreaching and merging the judgment. But with the judgment standing in the name of King, and with no knowledge on the part of Dennis that it really belonged to the bank, when he found the premises had been sold under that judgment he had the right to believe, and to act on the belief, that the judgment was an existing lien in favor of King, prior in date to the legal title of the bank under Swift's deed, and prior to the record of its equitable title under Davidson's assignment.

But it is urged that there is no evidence that the bank, or its attorney King, ordered out the execution on which the land was sold. There is no evidence that they did not, and the presumption is, in the absence of proof, that a clerk issues an execution only under the direction of some person authorized to control the writ. It would be a misfeasance in office were he to do otherwise. Besides, King bid in the property at the sale, paid up the costs, and at once notifies Woodworth, the president of the bank, what he has done. There can be no doubt then, but that the bank must be held chargeable with causing the execution to issue.

We think the redemption was allowed by the court below on the right basis, and the cross errors are not well assigned. It is but simple equity that Dennis should refund what the bank was obliged to pay Swift for the legal title. On that title Dennis had no lien. He could only have reached it, by doing precisely what the bank did. Had not the bank paid

Swift, he would have been obliged to do so in order to turn his equitable into a legal estate. Neither is he entitled to a credit, as urged by his counsel, for the redemption money paid by him. That payment was his voluntary act, and by it he acquired his title. It is the only perfected title acquired by him, even to the estate of Davidson. The deed under the first judgment he has never taken out. He cannot be permitted to claim his title under the redemption, and at the same time be permitted to claim that the money paid is not to be treated as redemption money, but to be applied to some other purpose. If it is not to be so treated, he is not yet in a position to ask the decree of this court. To claim title under the redemption and at the same time to claim that the money paid shall be applied to another purpose, is not unlike the inconsistency of the bank in selling under a judgment, and then claiming it was paid. The decree of the court below was in all respects right and is affirmed.

<div align="right">

*Decree affirmed.*