Barlow v. Cooper.

John C. Barlow v. Jane Cooper.

1. BILLS AND NOTES—*When Indorsee May Proceed Against Indorser Before Suing Makers.*—Under section 7, Ch. 98, R. S., an indorsee may recover against an indorser without demanding payment of the makers or protesting the note, by showing by a preponderance of the evidence that the institution of a suit against the makers would have been unavailing.

2. SAME—*Indorsee Need Not Go into Court of Equity in Order to*

*Hold Indorser.*—An indorsee may not be required to go into a court of equity to remove a cloud out of the way of an execution against the maker in order to entitle him to hold the indorsers.

3. SAME—*Whether Indorsee Might Have Satisfied Debt by Execution Against the Maker a Question of Fact.*—It is a question of fact whether an indorsee of a note might have obtained satisfaction of the debt by execution against the maker before proceeding against the indorsers.

4. LIEN—*Judgment of a Court of Record is, upon Real Estate Within County Belonging to the Person.*—A judgment of a court of record is a lien upon the lands, tenements, hereditaments, and all legal and equitable rights and interests therein and thereto belonging to the person against whom it is obtained, situated within the county for which the court is held.

5. SAME—*Of Judgment upon Equitable Estate—Instrument Under Which it Arises Need Not be Recorded.*—The lien of a judgment upon an equitable interest in land is not affected by the fact that the instrument under which it arises is not recorded.

6. PRESUMPTIONS—*Where Indorsee Waits Over Seven Years Before Suing Indorser.*—Where an indorsee waits over seven years before suing the indorser, there are no presumptions that because the times were hard and the property more or less old, nothing could have been collected from a maker all the time actively engaged in a business requiring considerable usable and salable personal property.

7. MORTGAGES—*When a Deed Amounts to.*—A deed absolute in form given by one party to others, together with a contract between the same parties providing that upon the payment of a sum of money the premises shall be re-conveyed, amounts to a mortgage of the premises.

8. SAME—*Right to Enforce Security Presumably Passes to Assignee of Debt.*—Presumably, the right to enforce the mortgage security passes to the assignee of a mortgage debt.

9. SAME—*Provision for Forfeiture in Defeasance Does Not Cut Off Right of Redemption.*—A provision for a forfeiture in a contract to reconvey, which is in fact a *defeasance* in a transaction amounting only to a mortgage, does not deprive the instruments of their mortgage character, nor cut off the right of redemption.

10. TITLE—*Possession of Real Property is Notice of Possessor's Title.*—Open and exclusive possession of real property by a person is notice of his title.

11. SAME—*Possession of Tenant Who Has Agreed to Purchase is Notice of His Title.*—Where a tenant changes his character by agreeing to purchase, his possession is notice of his equitable title.

12. DUE DILIGENCE—*Defined.*—Due diligence means reasonable diligence; it means such diligence as a prudent man would exercise in the conduct of his own affairs.

**Assumpsit,** on a promissory note. Appeal from the Circuit Court of LaSalle County; the Hon. HARVEY M. TRIMBLE, Judge presiding,

Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed April 21, 1903.

Reeves & Boys, attorneys for appellant.

McDougall & Chapman, attorneys for appellee.

Mr. Justice Dibell delivered the opinion of the court.

Newton A. Reeder and Mary A. Reeder, his wife, were makers, John C. Barlow and John Essington were payees and indorsers, and Jane Cooper was indorsee, of a promissory note for the principal sum of $1,000, dated March 17, 1892, due in one year, with interest at seven per cent per annum, payable semi-annually. The interest was paid to September 17, 1898. On August 16, 1900, Mrs. Cooper brought this suit against the makers and indorsers. Thereafter Essington paid half the amount due on the note. Mrs. Cooper then dismissed the suit as to all defendants but Barlow, and on a trial had a verdict and a judgment against him for $619, which was the full amount of the principal and interest still remaining unpaid. Barlow appeals.

This is a suit by indorsee against indorser brought about seven years and five months after the maturity of the note. The indorsee never demanded payment of the makers, never protested the note, and never sued the makers until she began this suit, which she afterward dismissed as to them. Under section 7 of chapter 98 of the revised statutes, entitled "Negotiable Instruments," in force when this note was given, plaintiff could nevertheless recover against Barlow, the indorser, by showing by a preponderance of the evidence that the institution of a suit against the makers would have been unavailing. But it was necessary for her to show that such a suit would have been unavailing, not only at the date of the maturity of the note, but also at all times thereafter till this suit against the indorser was begun. (Bledsoe v. Graves, 4 Scam. 382.) The cause was tried upon the second special count of the declaration, which averred that the makers were insolvent when the note was assigned to plaintiff, and ever since had been

wholly insolvent, and that at all times a suit against the makers would have been unavailing. The rule requires proof, not merely that a suit would have been unavailing, but also that the exercise of reasonable diligence would not have enabled plaintiff to collect a judgment and execution against the makers. (Roberts v. Haskell, 20 Ill. 59; Nixon v. Weyhrich, 20 Ill. 600; Chalmers v. Moore, 22 Ill. 359.) By their verdict the jury in effect found that no part of this note could have been collected of the makers by judgment and execution and due diligence to collect thereon, at any time between March 17, 1893, and August 16, 1900.

At all times covered by this inquiry Newton A. Reeder was the head of a family and entitled to $400 of exemptions. He testified his household goods from March 17, 1893, to August 16, 1900, would probably have brought $100 at sheriff's sale, and that he carried $250 insurance upon them. He was in the livery stable business when this note was given, and has been ever since. In 1895 he formed a partnership with his son in that business. He testified that between the summer of 1893 and the time he formed the partnership, all the property he had in the livery business, horses, harness, buggies, etc., would probably have sold at sheriff's sale for $600 to $800. The evidence was mainly directed to the property he had at the date of the maturity of the note, but this was increased before he formed the partnership. At the date of the maturity of the note he had in his possession and use in his business a closed carriage, not new, but in good condition, which he had bought the fall before from a manufacturer for $250, on which he had paid $75, and was to make payments of $25 per month. He testified the title was to remain in the manufacturer till the carriage was paid for. Counsel have discussed the question whether, under the facts, the manufacturer had any title which he could have asserted against plaintiff if she had obtained an execution against Reeder and levied upon this carriage. We regard that inquiry unimportant, as the proof stands. Reeder has had the carriage ever since. In the absence of proof we must

assume Reeder continued to make payments as agreed, and if so, he had the carriage paid for in seven months after this note matured, and it would then have been subject to execution in any event; and Reeder testified that on July 1, 1893, it would have sold for $150. The only showing as to its ownership was at the maturity of the note; but, as Reeder ever afterward retained it, the fair conclusion against plaintiff is that he paid for it and became its absolute owner. Afterward, and before the partnership, Reeder had acquired another closed carriage, and an omnibus and more horses, harnesses and buggies. When he took his son into partnership in 1895 the latter had been working for him for two years after he became of age without any agreement that Reeder should compensate him therefor. The son put nothing into the business, but Reeder gave him a half interest. While that was entirely commendable as between father and son, it may well be doubted whether it would have been good against an execution for the collection of this prior debt. Reeder testified that the property the firm had from the formation of the firm until August, 1900, would probably have sold at sheriff's sale for $1,600 or $1,700, though he afterward sought to recede from that statement. Even if but half of that was subject to execution against Reeder, it would have far exceeded his exemptions. There was other testimony as to the personal property Reeder had in his business when, and after, this note matured. It is true the proof showed much of this property was not new. But on the face of figures given, the property was worth decidedly more than Reeder's legal exemptions, and apparently a part of this debt could have been collected from Reeder's personal property. When an indorsee waits over seven years before suing the indorser, there ought to be no presumptions that, because the times were hard and the property more or less old, nothing could have been collected from a maker all the time actively engaged in a business requiring considerable usable and salable personal property. We are of opinion that on the question whether some part of this

note could have been collected from Reeder's personal property by due diligence a new trial ought to be awarded. If only a part could have been so collected it would be a defense to this note to that extent.

Reeder's livery stable was on lot 10, block 19, original town of Streator. He bought that property from Barlow and Essington, mortgaged it to Helen Waldron for $1,200 (the most of which loan went to remove a prior mortgage), and on the day of the date of the note here in suit, March 17, 1892, Reeder and wife conveyed said premises to Barlow and Essington, subject to the Waldron mortgage. This deed was recorded March 19th, and under that date a contract for the reconveyance of said premises from Barlow and Essington to Newton A. Reeder was prepared, and executed by Essington and Reeder. By an oversight, Barlow failed to sign the contract in evidence, but the proof is a duplicate was signed by all three, and all parties understood Barlow was a party to the contract, though the details were arranged by Essington. By the contract Reeder agreed to pay Barlow and Essington $3,500 as follows: $1,300 cash in hand, the receipt of which was thereby acknowledged, the note of $1,000, here in suit, and the deed back from the vendors to Reeder was to be subject to the $1,200 Waldron mortgage, which last named sum made up the balance of the $3,500 recited as the consideration for the contract. The recital of the payment by Reeder of $1,300 in cash was untrue. He paid Barlow and Essington a sum the amount of which is not remembered alike by the different parties, but it seems to have been from $200 to $400; such payment was not for a reconveyance, but applied on the original purchase price of the lot, which he had theretofore purchased partly from Essington and partly from Barlow. In fact, the deed from the Reeders to Barlow and Essington was only made to secure payment of the note here in suit, and when he had paid that note they were to reconvey to him, and the contract so provided in effect. Reeder remained in possession of the property for several years thereafter, and during that time expended

$500 or $600 in improvements thereon.  Finally suit was brought to foreclose the Waldron mortgage.  Essington then conveyed what title he had in the lot to Barlow and the latter paid the Waldron mortgage, and agreed to convey half the property back to Essington if the latter within a certain time repaid him half what he expended in paying the Waldron mortgage.  Essington did not repay Barlow.

The instructions present the question whether the due diligence required to hold an indorser made it incumbent upon Mrs. Cooper to obtain a judgment against Newton A. Reeder, and levy an execution upon his interest in this real estate, and sell thereunder.  Section one of our statute upon judgments makes a judgment of a court of record a lien upon the real estate of the person against whom it is obtained, situated within the county for which the court is held; and section 3 provides that the term " real estate " in said act shall include "lands, tenements, hereditaments, and all legal and equitable rights and interests therein and thereto."  The instruments between Reeder on the one hand and Essington and Barlow on the other were but a second mortgage to secure the note here in suit.  (Cassem v. Heustis, 201 Ill. 208, 215.)  Reeder owned the equitable title because the conveyance from him was only a mortgage. A judgment against Reeder in a court of record in that county would have been a lien upon his equitable title to that lot.  (Gorham v. Farson, 119 Ill. 425, 439.)  The lien would not have been affected by the fact that the contract to reconvey (in other words, the defeasance,) was not of record.  (Niantic Bank v. Dennis, 37 Ill. 381.)  But it is said Mrs. Cooper did not have notice of Reeder's title. Reeder was in open and exclusive possession for some years after this note matured.  That possession was notice of his title.  (Barlow v. Robinson, 174 Ill. 317.)  Where a tenant changes his character by agreeing to purchase, his possession is notice of his equitable title.  (Farmers' National Bank v. Sperling, 113 Ill. 273; Coari v. Olsen, 91 Ill. 273.) Due diligence by Mrs. Cooper in seeking to collect this note, demanded inquiry by her to ascertain by what right or

title he held this real estate; and such inquiry would, we must assume, have led to a knowledge of all the facts. It is to be borne in mind not only that the conveyance by Reeder to Essington and Barlow was only by way of mortgage to secure this note, but also that when Mrs. Cooper bought this note of Essington and Barlow she paid them for it, and they ceased to have any further right to the premises except to protect them against the contingency of their being compelled to pay the note as indorsers. Presumably, the right to enforce this security passed to Mrs. Cooper by the assignment to her of the debt for which the land was security. (Bradley v. Lightcap, 201 Ill. 511, 516.) It is true the indorsee could not be required to go into a court of equity to remove a cloud out of the way of an execution against Reeder in order to entitle her to hold the indorsers. (Bledsoe v. Graves, *supra*.) But, under the authorities, a judgment against Reeder would have been a lien on Reeder's interest, and it could have been levied on and sold without resort to a court of equity. At the maturity of this note the lot was worth from $2,500 to $3,000 according to the proof. The only liens upon it were the Waldron mortgage for $1,200, and the mortgage securing this $1,000 note. We can not assume, nor does the proof show, that no person could have been found who, with a knowledge of the facts, would have been willing to buy the property and pay therefor $2,200, and the accrued interest and costs. It is, however, argued no one could have safely bid for Reeder's interest at execution sale because the contract for reconveyance from Essington and Barlow to Reeder made time of the essence of the contract and authorized Essington and Barlow to declare a forfeiture if Reeder did not pay the note at maturity; and it is argued an intending purchaser would fear Essington and Barlow might exercise that right. Such a provision for forfeiture in a contract to reconvey, which is in fact a defeasance in a transaction amounting only to a mortgage, does not deprive the instruments of their mortgage character, nor cut off the right of redemption. (Jackson v. Lynch, 129 Ill. 72.) The fact that the whole transaction

was a mortgage only, and that Reeder was in possession as equitable owner, deprived the provision for forfeiture of all importance. But further, Mrs. Cooper had paid Essington and Barlow their money in full. They no longer owned the note, and there could be no default thereafter which would permit them to forfeit the contract, unless, indeed, they were afterward compelled to repay the note as indorsers. There was never a time after Mrs. Cooper bought this note and before the commencement of this suit when Essington and Barlow could have forfeited the contract. It is manifest they would not have done so, for they would have thereby destroyed the security for the note they had assigned and on which they were still liable as indorsers. We do not hold Mrs. Cooper was bound to bid in this property at execution sale. She might have been financially unable to lift the Waldron mortgage. But Mrs. Cooper was bound to use due diligence both to recover a judgment against the makers and also to obtain satisfaction thereof.

" Due diligence means reasonable diligence; it means such diligence as a prudent man would exercise in the conduct of his own affairs." (Nixon v. Weyhrich, *supra*.)

If a judgment creditor exercising reasonable diligence to collect a debt from Reeder would have endeavored to find a purchaser of Reeder's interest in this real estate at execution sale, then that duty devolved upon Mrs. Cooper. It can not be said, as a matter of law, that no one would have bid anything for Reeder's equitable title to this property. If any part of this note could have been made by an execution sale of Reeder's equitable title, that would be a defense here *pro tanto*. It was for the jury to determine, as a question of fact, whether, under all the circumstances, anything could have been made out of this real estate under an execution against Reeder at any time between the first term of the Circuit Court of said county at which judgment could have been obtained after the maturity of the note, and August 16, 1900. So far as the instructions indicated that as a matter of law plaintiff was not bound to resort to this real estate, they were incorrect. If she could have collected

anything by a levy upon and sale of Reeder's interest in the land she was bound to pursue that course, and whether she could was a question of fact.

But it is said Barlow ought not to be heard to interpose this defense when he holds the legal title to this property as security for this note. What disposition would be made of the defense if this were a bill in equity by Mrs. Cooper to enforce the mortgage securing her note, we are not now called upon to decide. The only litigated question here, in this action at law by indorsee against indorser, is whether due diligence in prosecuting a suit at law against Reeder would have been unavailing.

The judgment is therefore reversed and the cause remanded for a new trial.