## County of Cass. Appellee, v. George F. Kuhlman, Appellant.

### Gen. No. 7,926.

1. COUNTIES—*sufficiency of evidence to show one receiving payment for services as overseer of poor was at same time acting as county commissioner.* In a suit by a county to recover sums alleged to have been paid to defendant for services as overseer of the poor, such payments having been unlawfully demanded and received while defendant was acting as commissioner of the plaintiff county, evidence held sufficient to show that defendant was acting as county commissioner at the times alleged.

2. COUNTIES—*sufficiency of evidence to show one acting as county commissioner received proceeds of warrants issued for his claims for services as overseer of poor.* In a suit by a county to recover sums alleged to have been paid to defendant for services as overseer of the poor, such payments having been unlawfully demanded.

and received while defendant was acting as commissioner of the plaintiff county, evidence held sufficient to show that defendant received the proceeds of certain warrants issued in payment of his claims for such services.

Appeal by defendant from the Circuit Court of Cass county; the Hon. Guy R. Williams, Judge, presiding. Heard in this court at the October term, 1925. Reversed and remanded with directions. Opinion filed March 8, 1926.

W. H. Dieterich, for appellant.

Walter F. Dodd, for appellee.

Mr. Presiding Justice Niehaus delivered the opinion of the court.

Appellee brought suit against appellant to recover the sum of $800 alleged to have been received by him as overseer of the poor while acting as county commissioner of Cass county. A special count and the common counts were filed. The special count charges that defendant was elected county commissioner in November, 1922, qualifying in December of that year and acting as such until April, 1924, when the government of the county was changed to township organization; that defendant, while acting as such county commissioner, unlawfully claimed, demanded and received during each quarter of each year of his said term of office from Cass county the sum of $150 as compensation for the performance of the duties of overseer of the poor, receiving in the aggregate the sum of $800. The general issue of nonassumpsit was filed and the cause heard by the court without a jury.

At the trial the evidence was sufficient to establish the two essential elements of plaintiff's case, viz: (1) That defendant was county commissioner; (2) that while county commissioner, he received as overseer of the poor the sum of money demanded of him, that sum being allowed by the county board. The court thought the evidence insufficient to prove the entire

claim and rendered a judgment for only $450. Defendant appealed assigning the usual errors challenging the sufficiency of the evidence, propriety of the court's rulings, denial of motion for new trial, and that the judgment is against the law and the evidence. Plaintiff assigns two cross errors: The rendition of a judgment for too small an amount, and rejection of three items of its demand. Were it not deemed necessary to examine the record upon the cross errors, we would rest upon the statement made here, only referring to what we said in deciding a similar case at the present term of *County of Cass v. Kloker*, 239 Ill. App. 301. We are satisfied with the conclusion there reached as applied to this case so far as the court went. We shall therefore examine the record upon the cross errors only.

The circuit court found the defendant was a county commissioner as alleged in the declaration. In the statement preceding the brief and argument of appellant, counsel say there was no evidence introduced by plaintiff to show that defendant was a county commissioner, and no evidence showing that the signatures on the warrants are the signatures of defendant. Those points are not again touched in the brief or the argument. They are devoted to a discussion of the right of defendant to take the money from the county in the manner in which he took it. This is a tacit admission he did take it. But plaintiff put in evidence records of proceedings of the county board showing it to consist of defendant and two other members. These records were made by the county clerk, the person authorized by law to make them. These records import verity. The declaration averring defendant was a county commissioner, and the status not being specially denied, it was not necessary to prove that fact more specifically.

On the subject of proof of official character, a noted author says: "For the same reason (notoriety of of-

ficial character), and from the strong presumption arising, from the undisturbed exercise of a public office, that the appointment to it is valid, it is not, in general, necessary to prove the written appointments of public officers. All who are proved to have acted as such are presumed to have been duly appointed to the office, until the contrary appears; and it is not material how the question arises, whether in a civil or criminal case, nor whether the officer is or is not a party to the record; unless, being plaintiff, he unnecessarily avers his title to the office, or the mode of his appointment; in which case, as has already been shown (section 56) the proof must support the entire allegation." 1 Greenleaf on Evidence 689 (16th ed. sec. 563g).

It need hardly be said that if such presumptions are indulged in favor of persons claiming office by appointment, for stronger reason will they be indulged when collaterally involved as to persons claiming to be elective officers and acting as such. The fact must be noted in this connection that defendant did not deny official character. The court patiently allowed time to procure his attendance at the trial after the case was closed, but he could not be found. No one reading the record can doubt he was county commissioner. No contention is made in brief or argument that he was not. His mouth is closed against saying he was not.

The items constituting the claim of $800 for which suit was brought are, in numbers, dates and amounts, as follows: No. 31,836 Dec. 18, 1922, $50; No. 32,308 March 14, 1923, $150; No. 32,773 June 15, 1923, $150; No. 33,097 Sept. 19, 1923, $150; No. 33,435 Dec. 24, 1923, $150; No. 33,613 March 19, 1924, $150. The court allowed the last three and refused to allow the first three. He was of the opinion the evidence did not establish the fact defendant received the first three. Certain records were introduced, made by the county clerk and the county treasurer. They are important.

In view of the confusion presented at the trial of this case, in the introduction of evidence as to action of the county board and the legal effect of the records, we call attention to the law bearing upon that subject.

By section 10, chapter 35, Statutes of Illinois [Cahill's St. ch. 35, ¶ 10], among the duties of county clerks they are required: (1) To keep an accurate record of the proceedings of the county board, file and preserve all bills of account acted upon by the board, and when any account is allowed or disallowed, he shall note that fact thereon, and when a part of any account is allowed he shall note particularly the items allowed. (2) To keep a book in which he shall enter the number, date and amount of each order upon the county treasurer, and the name of the person in whose favor the same is drawn, and when such order is canceled, he shall note the date of cancellation opposite such entry. (3) Before any such order is delivered to the person for whose benefit it is drawn, the county clerk shall present the same to the county treasurer, who shall personally countersign the same.

By section 5, chapter 36 [Cahill's St. ch. 36, ¶ 5], the county treasurer is required to keep books of account of moneys received by him, and of all moneys paid out by him, stating when, to whom and on what account payment is made. By section 7 [Cahill's St. ch. 36, ¶ 7], he is required to countersign a warrant presented to him, and to enter in a book kept by him for that purpose, the number, date and amount and the name of the person to whom payable, and when paid shall cancel the same and note the fact opposite said entry.

These statutory provisions are referred to for the purpose of showing the authority the records possess considered in the light of the common law. In the first place they are admissible in evidence because required by law to be kept. They are supported by a presumption that they speak the truth. The mere production

of them by the officer charged with the duty of keeping them avouches their genuineness and their authenticity. By their production by the custodian the court judicially knows they are required by law to be kept, and knows also the proper place of their keeping. The ordinary tests of genuineness and authenticity of private documents are not required. This is because they have been made by authorized and accredited agents appointed for the purpose, as well as the publicity of their subject matter. The persons making such books, entries and registers are in fact the agents of all the individuals comprising the State. Every member of the community may be supposed to be a party to the investigation. They are, therefore, entitled to an extraordinary degree of confidence and not necessary to be attested by the ordinary tests of truth. 1 Greenleaf on Evidence, sections 483, 484. In *Niantic Bank v. Dennis*, 37 Ill. 381, 386, the court speaking of the presumption said:

"But it is urged that there is no evidence that the bank, or its attorney King, ordered out the execution on which the land was sold. There is no evidence that they did not, and the presumption is, in the absence of proof, that a clerk issues an execution only under the direction of some person authorized to control the writ. It would be a misfeasance in office were he to do otherwise. Besides, King bid in the property at the sale, paid up the costs, and at once notified Woodworth, the president of the bank, what he had done. There can be no doubt then, but what the bank must be held chargeable with causing the execution to issue."

In the *City of Peoria v. Central Nat. Bank*, 224 Ill. 43, 65, it is said: "The presumption always is that public authorities do their duty, and it is therefore to be presumed until the contrary is shown that the public official who recorded this plat copied it correctly" (citing *Niantic Bank* case, *supra; Cook v. Chicago,* 57

Ill. 268; *Spring v. Kane*, 86 Ill. 580). See also, *Waite v. Green River Special Drain. Dist. Com'rs*, 226 Ill. 207, 210; *State v. Illinois Cent. R. Co.*, 246 Ill. 188, 247, and other cases.

In the first paragraph of his argument, counsel for appellant says: "In this case there is absolutely no proof of the payment to defendant, George Kuhlman, of his claims numbered 31836, 32308 and 32773; the only proof in the record is that he filed such claims and the Warrant Register shows that warrants were issued for the same." The record abundantly supports the last statement. But it does more. Looking at the transaction as a whole, attention is arrested by the question, why did he take and cash the last three and not the first three? He began making these claims at the first meeting of the board after he was elected, receiving only $50 for one third of a quarter year's pay. He did not see fit to appear and contest the vital fact charged against him of having received the money from those warrants. The warrants corresponding to those items could not be found. The record shows a diligent search was made for them. Where were they? Defendant did not account for them and with the records in evidence, he must have received them, or the clerk was guilty of misfeasance and some one guilty of forgery or false personation.

The evidence shows that the county employed an accountant to examine into its financial affairs. He and his assistants examined every available source of information with regard to the county's finances. They checked the claims allowed by the commissioners and compared them with the different records of warrants which the law required the county clerk and county treasurer to keep. They all corresponded exactly, except that the warrants covering the first three claims were missing and could not be found. The evidence shows that in the process of the audit they checked the county's obligations with its funds in the

bank. This check disclosed that the funds available, after allowing credit for the amount of these three warrants, exactly balanced the account. It is impossible to conjure a theory that will account for that condition except that the amounts were drawn out by the only means they could honestly under ordinary conditions be drawn out—by county warrants. By the records kept as provided by law, it is shown the claims were allowed and the warrants issued. The fact that they were lost or misplaced is immaterial. They must have been misplaced or lost after payment. Their loss or misplacement is the only account that can be given. But the known vigilance and course of business of banks and the presumed fidelity of public officials supported by the silence of defendant forbids any conclusion except that he got the money. Unless we presume, with nothing on which to base the presumption, that some of the county's officials cashed and destroyed the first three warrants, we must infer that Kuhlman cashed them. We are of the opinion and so hold that the evidence sustains plaintiff's contention that Kuhlman got the money on the warrants which the records show were issued in payment of his illegal claims. There is no circumstance discrediting the conclusion.

We find and so hold that the evidence sustains the averments of the declaration and that the county of Cass is entitled to recover the sum of $800 from the defendant. The judgment of the circuit court of Cass county is reversed upon the cross errors assigned, and the cause is remanded to that court with directions to render a judgment for the plaintiff against defendant for the sum of $800 and for costs. Judgment will be entered in this court against appellant for all costs occasioned by this appeal.

*Reversed and remanded with directions.*